1  GEORGE E. GREER (pro hac vice pending)
   ggreer@orrick.com
2  CATHERINE Y. LUI (STATE BAR NO. 239648)
   clui@orrick.com
3  DARREN S. TESHIMA (STATE BAR NO. 238875)
   dteshima@orrick.com
4  SHANNON C. LEONG (STATE BAR NO. 268612)
   sleong@orrick.com
5
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
   405 Howard Street
7  San Francisco California  94105-2669
   Telephone:     +1-415-773-5700
8  Facsimile:     +1-415-773-5759

9

10 Attorneys for Plaintiffs
   Habeas Corpus Resource Center and the Office of the
   Federal Public Defender for the District of Arizona
11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15 Habeas Corpus Resource Center and the Office of the Federal Public Defender for the District of Arizona, | Case No. 13-CV-4517-JCS |
| 16 | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION FOR (1) TEMPORARY RESTRAINING ORDER; AND (2) ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |
| 17             Plaintiffs, | |
| 18        v. | |
| 19 United States Department of Justice and Eric H. Holder, in his official capacity as United States Attorney General, | Date:        TBD |
| 20 | Time:        TBD |
| 21         Defendants. | Dept:        TBD<br>Judge:      TBD |

22

23

24

25

26

27

28

OHSUSA:754652460.7

1

**TABLE OF CONTENTS**

2

**Page**

3   I.    INTRODUCTION ............................................................................................. 1

4   II.   STATEMENT OF FACTS ............................................................................... 2

5         A.   Background On The Final Rule .............................................................. 2

6         B.   The Public Comments Period.................................................................. 3

          C.   The 2013 Final Rule ............................................................................... 4

7         D.   The Impact Of The 2013 Final Rule ...................................................... 5

8         E.   Plaintiffs' Efforts To Meet And Confer With Defendants...................... 6

9   III.  LEGAL STANDARD ...................................................................................... 7

10        A.   Preliminary Injunction ........................................................................... 7

          B.   Administrative Procedure Act And Due Process Clause ........................ 7

11
    IV.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
12        CLAIMS........................................................................................................... 8

13        A.   Defendants Have Violated The Administrative Procedures Act  And The
               Due Process Clause By Failing To Provide Adequate Notice Of The Final
14             Rule ........................................................................................................ 8

15        B.   Defendants Violated The Administrative Procedure Act By Failing To
               Respond To Significant Public Comments .............................................. 9

16        C.   The Final Rule's Procedurally Deficient Certification Process Is Arbitrary
               And Capricious, Is Contrary To Congressional Intent, And Has Violated
17             The Due Process Clause........................................................................ 11

18             1.   The Attorney General's Determination that Certification Does Not
                    Constitute Rulemaking Contravenes the APA......................... 12
19
               2.   The Certification Process Unlawfully Fails to Require Anything
20                  More Than A "Request in Writing" ......................................... 13

21             3.   The Certification Process Fails to Provide Appropriate Notice
                    Regarding State Certification.................................................. 14
22
               4.   The Certification Process Unlawfully Shifts the Burden of Proof
23                  from the State to Interested Parties ......................................... 16

24             5.   The Certification Process Fails to Allow Interested Parties to
                    Petition for Repeal of Certification .......................................... 17
25
          D.   Defendants Violated The Administrative Procedure Act By Adopting
26             Substantively Deficient Certification Requirements............................. 18

          E.   Defendants' Involvement In The Rulemaking And Certification Processes
27             Violates The Due Process Clause ......................................................... 18

28

**TABLE OF CONTENTS**
(continued)

Page

V.     PLAINTIFFS WILL BE IRREPARABLY HARMED WITHOUT INJUNCTIVE
       RELIEF ........................................................................................................... 21

VI.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY
       FAVOR A GRANT OF A TEMPORARY RESTRAINING ORDER AND
       PRELIMINARY INJUNCTION....................................................................... 22

VII.   CONCLUSION ............................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aetna Life Ins. Co. v. Lavoie*,
    475 U.S. 813 (1986) .................................................................................................. 19

*Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of Berkeley*,
    114 F.3d 840 (9th Cir. 1997) .................................................................................... 19

*Am. Min. Cong. v. EPA*,
    965 F.2d 759 (9th Cir. 1992) .................................................................................... 10

*Appalachian Power Co. v. EPA*,
    249 F.3d 1032 (D.C. Cir. 2001) ............................................................................... 10

*Ashmus v. Calderon*,
    31 F. Supp. 2d 1175 (N.D. Cal. 1998) ..................................................................... 16

*Ashmus v. Woodford*,
    202 F.3d 1160 (9th Cir. 2000) .................................................................................. 16

*Associated Gen. Contractors v. Coal. for Econ. Equity*,
    950 F.2d 1401 (9th Cir. 1991) .................................................................................. 22

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204, 216-17 (1988) .................................................................................... 12

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868 (2009) .................................................................................................. 19

*Checkosky v. SEC*,
    139 F.3d 221 (D.C. Cir. 1998) ................................................................................. 19

*Chevron v. Natural Res. Def. Council*,
    467 U.S. 837 (1984) .................................................................................................. 17

*Columbia Falls Aluminum Co. v. EPA*,
    139 F.3d 914 (D.C. Cir. 1998) ................................................................................. 13

*Earth Island Inst. v. Ruthenbeck*,
    490 F.3d 687 (9th Cir. 2007) ...................................................................................... 7

*Eisinger v. Fed. Labor Relations Auth.*,
    218 F.3d 1097 (9th Cir. 2000) .................................................................................. 17

*Exxon v. FERC*,
   182 F.3d 30 (D.C. Cir. 1999) ................................................................................................ 14

*Fry v. Pliler*,
   551 U.S. 112 (No. 06-5247), 2007 WL 697886 ................................................................. 20

*Gamboa v. Rubin*,
   80 F.3d 1338 (9th Cir. 1996), *vacated on jurisdictional grounds*, 101 F.3d 90
   (9th Cir. 1996)..................................................................................................................... 9, 11

*Garrison v. Hudson*,
   468 U.S. 1301 (1984) ........................................................................................................ 22, 23

*Gonzales v. Crosby*,
   545 U.S. 524 (2005) ) (No. 04-6432), 2005 WL 760331.......................................................... 20

*Habeas Corpus Res. Ctr v. U.S. Dep't of Justice*,
   Case No. 08-cv-02649, 2009 WL 185423 (N.D. Cal. Jan. 20, 2009) ......................... 3, 22, 23

*Hamdi v. Rumsfeld*,
   542 U.S. 507 (2004) ....................................................................................................... 7, 8, 14

*Cal. ex rel. Harris v. Fed. Hous. Fin. Agency*,
   C 10-03084 CW, 2011 WL 3794942 (N.D. Cal. Aug. 26, 2011) ........................................ 12

*Honeywell Int'l, Inc. v. EPA*,
   372 F.3d 441 (D.C. Cir. 2004) ................................................................................................ 9

*Interstate Natural Gas Ass'n v. FERC*,
   494 F.3d 1092 (D.C. Cir. 2007) .............................................................................................. 9

*Int'l Fabricare Inst. v. U.S. EPA*,
   972 F.2d 384 (D.C. Cir. 1992) ................................................................................................ 9

*Jones v. Flowers*,
   547 U.S. 220 (2006) ........................................................................................................... 8, 9

*Judulang v. Holder*,
   __ U.S. __, 132 S. Ct. 476 (2011) ................................................................... 13, 14, 17

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................................ 22

*Long Island Care at Home, Ltd. v. Coke*,
   127 S. Ct. 2339 (2001) ....................................................................................................... 78

*Louis v. U.S. Dep't of Labor*,
   419 F.3d 970 (9th Cir. 2005)................................................................................................. 8

- iv -

*Mayle v. Felix,*
545 U.S. 644 (2005), 2005 WL 435884 ................................................... 19, 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ........................................................................................ 13, 18

*Mount Diablo Hosp. v. Shalala,*
3 F.3d 1226 (9th Cir. 1993) ................................................................................... 14

*In re Murchison,*
349 U.S. 133 (1955) ...................................................................................... 19, 20

*Nat'l Black Media Coal. v. FCC,*
791 F.2d 1016 (2d Cir. 1986) .............................................................................. 15

*Pearson v. Shalala,*
164 F. 3d 650 (D.C. Cir. 1999) ...................................................................... 13, 18

*Pension Benefit Guar. Corp. v. LTV Corp.,*
496 U.S. 633 (1990) ............................................................................................. 12

*Portland Audubon Soc'y v. Endangered Species Comm.,*
984 F.2d 1534 (9th Cir. 1993) ............................................................................. 15

*Ramirez-Alejandre v. Ashcroft,*
320 F. 3d 858 (9th Cir. 2003) .......................................................................... 8, 15

*S. Terminal Corp. v. EPA,*
504 F.2d 646 (1st Cir. 1974) ............................................................................... 18

*San Diegans for the Mt. Soledad Nat'l War Mem'l v. Paulson,*
126 S. Ct. 2856 (2006) ........................................................................................ 23

*Sierra Club v. EPA,*
671 F.3d 955 (9th Cir. 2012) ............................................................................... 14

*Spears v. Stewart,*
267 F.3d 1026 (9th Cir. 2001) ............................................................................ 16

*Stivers v. Pierce,*
71 F.3d 732 (9th Cir. 1995) ................................................................................. 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
240 F.3d 832 (9th Cir. 2001) ................................................................................. 7

*Walker v. City of Berkeley,*
951 F.2d 182 (9th Cir. 1991) ............................................................................... 19

*Walters v. Reno,*
145 F.3d 1032 (9th Cir. 1998) ............................................................................... 7

*Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*,
    86 F.3d 1188 (D.C. Cir. 1996) ............................................................................... 20

*Williams v. Mukasey*,
    531 F.3d 1040 (9th Cir. 2008) ................................................................................. 8

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................................... 7

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ................................................................................................. 19

*Yesler Terrace Community Council v. Cisneros*,
    37 F.3d 442 (9th Cir. 1994) ................................................................................... 12

**Federal Statutes**

5 U.S.C. § 553 ............................................................................................................... 12

5 U.S.C. § 553(b)(3) ....................................................................................................... 8

5 U.S.C. § 553(b) ........................................................................................................... 8

5 U.S.C. § 553(c) ...................................................................................................... 8, 14

5 U.S.C. § 553(e) ......................................................................................................... 18

5 U.S.C. § 554 ............................................................................................................... 12

5 U.S.C. § 555(e) .................................................................................................... 10, 16

5 U.S.C. § 706(2) ........................................................................................................... 7

5 U.S.C. § 706(2)(A) ..................................................................................................... 14

28 U.S.C. § 2263(a) ........................................................................................................ 5

28 U.S.C. § 2263(b) ........................................................................................................ 5

28 U.S.C. § 2266(a) ........................................................................................................ 5

28 U.S.C. § 2266(b) ........................................................................................................ 5

28 U.S.C. § 2266(b)(3)(B) .............................................................................................. 5

42 U.S.C. § 14163d (a)(4) ............................................................................................. 20

**Rules**

Fed. R. Civ. P. 65(b) ....................................................................................................... 7

**Regulations**

77 Fed. Reg. 7559 ................................................................................................ 9

76 Fed. Reg. 11,705 ............................................................................................. 9

72 Fed. Reg. 31,217 ............................................................................................. 3

78 Fed. Reg. 58,160 .......................................................................................... 1, 8

78 Fed. Reg. 58,162 ...................................................................................... 17, 18

78 Fed. Reg. 58,163 .......................................................................................... 11

78 Fed. Reg. 58,164 .......................................................................................... 11

78 Fed. Reg. 58,174 .................................................................................. 4, 10, 12

78 Fed. Reg. 58,175 .......................................................................................... 10

78 Fed. Reg. 58,178 .......................................................................................... 17

78 Fed. Reg. 58,179 .......................................................................................... 17

78 Fed. Reg. 58,180 .......................................................................................... 15

78 Fed. Reg. 58,183 .......................................................................................... 17

78 Fed. Reg. 58,184 ................................................................................ 14, 15, 17

1    **I.    <u>INTRODUCTION</u>**

2          On September 30, 2013, Plaintiffs Habeas Corpus Resource Center ("HCRC") and Office

3    of the Federal Public Defender for the District of Arizona ("FDO-AZ") brought this action for

4    injunctive relief to set aside the September 23, 2013 Final Rule regarding Certification Process

5    for State Capital Counsel System (the "Final Rule"), Certification Process for State Capital

6    Counsel Systems, 78 Fed. Reg. 58,160 (effective Oct. 23, 2013) (to be codified at 28 CFR pt. 26).

7    The Final Rule was issued by Defendants United States Department of Justice ("DOJ") and

8    United States Attorney General Eric Holder ("Attorney General") (collectively "Defendants") on

9    September 23, and will become effective on October 23 (the "Effective Date").

10          Despite the gravity of the Final Rule—it significantly limits the federal habeas rights of

11   death-sentenced prisoners—the Final Rule contains significant deficiencies that violate the

12   Administrative Procedure Act ("APA") and the Due Process Clause of the U.S. Constitution.

13   Consequently, Plaintiffs seek immediate injunctive relief to properly protect these prisoners'

14   rights.  Plaintiffs' application for a TRO and order to show cause for preliminary injunction is

15   premised on the following facts:

16        - The Final Rule governs Defendants' review and certification of mechanisms
             established by the states for the appointment, compensation, and payment of
17           reasonable litigation expenses of competent counsel for prisoners sentenced to death.

18        - Once a state is certified to have a mechanism establishing competent counsel, the
             statute of limitations for federal habeas proceedings for death-sentenced prisoners is
19           greatly shortened and is retroactive, reaching back to the date the mechanism was
             established.

20        - The Final Rule is defective for a number of reasons including that it (i) fails to provide
             adequate notice of the Final Rule; (ii) fails to sufficiently respond to significant public
21           comments regarding deficiencies in the proposed regulations; (iii) does not include
             adequate certification procedures; and (iv) fails to protect against Defendants' inherent
22           conflict of interests and the risk of bias in the certification process.

23          Immediate injunctive relief is warranted because Plaintiffs are likely to suffer irreparable

24   harm without the Court enjoining the Effective Date of the Final Rule pending the resolution of

25   this litigation.  The procedural deficiencies in the Final Rule, at this time, create ambiguity that

26   prevents Plaintiffs from making informed decisions and providing sound advice to their clients

27   regarding their state and federal habeas challenges.  The irreparable harm is already imminent

28

1    because the State of Arizona, prior to the publication of the Final Rule, applied for certification.

2    The potential that Defendants could certify Arizona shortly after the Effective Date, in spite of an

3    unlawful Final Rule and inadequate certification process, poses significant problems for how

4    FDO-AZ should allocate limited attorney and financial resources, and provide legal advice to its

5    clients.  Similarly, the imminent threat of the State of California applying for certification on or

6    after the Effective Date forces HCRC into the untenable position of trying to advise its clients and

7    capital defense attorneys throughout California under an ambiguous and murky legal framework.

8    An injunction is the only way to ensure that habeas petitioners' rights are protected while the

9    legality of the Final Rule is being litigated.  Accordingly, based on the reasons discussed further

10   below, Plaintiffs respectfully request the following relief:

11        1. A temporary injunction enjoining Defendants from putting into effect the Final Rule

12   pending the litigation of this action; and

13        2. An order to show cause for a preliminary injunction hearing within a time frame

14   permitted by the applicable laws, or otherwise agreed to by the parties.

15   **II.     STATEMENT OF FACTS**

16        **A.     Background On The Final Rule**

17        The Antiterrorism and Effective Death Penalty Act of 1996 added Chapter 154 of Title 28

18   of the United States Code ("Chapter 154") to provide procedural incentives in federal review of

19   state capital convictions to states that guarantee death-sentenced prisoners the appointment and

20   compensation of competent counsel and reasonable litigation resources necessary to develop

21   constitutional claims in collateral proceedings.  Chapter 154 was modeled on the

22   recommendations of the Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, often

23   referred to as the "Powell Committee," which identified the "pressing need for qualified counsel

24   to represent inmates in collateral review" as one of the most serious obstacles to the resolution of

25   capital post-conviction litigation.  Ad Hoc Committee on Federal Habeas Corpus in Capital Cases

26   Committee Report, 135 Cong. Rec. S13471-04, S13482 (1989).

27        This is not the first time Chapter 154 has been litigated in this Court.  In 2007, the former

28   Attorney General, Alberto Gonzales, published Proposed Regulations to govern the process for

certification determinations.  Certification Process for State Capital Counsel Systems, Notice of Proposed Rulemaking, 72 Fed. Reg. 31,217 (proposed June 6, 2007) (to be codified at 28 CFR pt. 26).  The final rule was published on December 11, 2008 ("2008 Regulation").  Plaintiff HCRC sued the same Defendants for violations of the Freedom of Information Act and later amended its complaint to postpone the enforcement of the 2008 Regulation due to significant constitutional and APA violations.  Compl., *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, No. 08-cv-2649 (N.D. Cal. May 27, 2008).  In January 2009, this Court granted a preliminary injunction, enjoining Defendants from putting into effect the 2008 Regulation without first providing an additional public comment period.  *Habeas Corpus Res. Ctr v. U.S. Dep't of Justice*, Case No. 08-cv-02649, 2009 WL 185423, at *10 (N.D. Cal. Jan. 20, 2009) (Decl. of Darren S. Teshima, Ex. A).

The 2008 Rule never went into effect.  After receiving additional public comment, Defendants ultimately removed the 2008 Regulation by a final rule published in November 2010.  Now, a similar process has played out: the Final Rule has revealed multiple procedural and substantive deficiencies that must be rectified before the Final Rule can be put into effect.

**B.     The Public Comments Period**

Defendants published a notice of proposed rulemaking ("NPRM") for the certification regulations on March 3, 2011.  Teshima Decl. Ex. B.  The NPRM provided a comments period and during this period, numerous members of the public submitted comments including Plaintiffs.  Plaintiffs identified in their comments that focused on the following issues, among others:

- The final regulations must require a state mechanism to ensure that appointed counsel actually provide competent representation.

- The Attorney General is required to identify what information he has relied upon in making certification decisions and should give notice of all denials of certification, not just grants.

- The inadequate procedures for contesting a state's certification application—specifically, the failure to identify what type of information will be considered in granting or denying a certification application.

*See* Teshima Decl. Ex. C at Exs. 2-3.

On February 13, 2012, Defendants published a supplemental notice, soliciting additional comments.  Teshima Decl. Ex. D.  The supplemental notice addressed provisions relating to the competency on standards of counsel, the timely provision of competent counsel, the effect of certification of compliance with benchmarks, and the renewal of certifications.  Plaintiffs submitted comments to the supplemental notice, focusing on the following issues:

- The proposed regulations' "catch-all" provision, section 26.22(b)(3), which allows states to obtain certification if they "reasonably assure a level of proficiency appropriate for State post-conviction litigation in capital cases" should be deleted or modified.  This catch-all provision renders meaningless the proposed sections 26.22(b)(1) and 26.22(b)(2), which provided some standards for determining the competence of counsel.

- The certification process should not allow for a certification until a state has carried its burden of demonstrating the required standards are in fact implemented by the state.

- The regulation must clarify the public's right to seek repeal of a state's certification and include decertification procedures.

*See* Teshima Decl. Ex. C at Exs. 4-5.

## C.     The 2013 Final Rule

On September 23, 2013, the Final Rule was published.  Teshima Decl. Ex E.  The Final Rule is scheduled to go into effect on October 23, 2013.  *Id.*

Notably, in publishing the Final Rule, the Attorney General for the first time stated that the Final Rule was fashioned with the understanding that certification decisions are not subject to the rulemaking provisions of the APA, 78 Fed. Reg. at 58,174, thus denying the public the opportunity to comment on this important interpretation.  Additionally, for the first time, the Attorney General indicated he would make certification decisions based on information he privately collected from state attorney generals, *id.*, a fact that has become abundantly clear in the Attorney General's treatment of the Arizona application.  Baich Decl. ¶¶ 7-8.  Again, the public was deprived of the opportunity to comment on this important component on how the Attorney General would certify a state's mechanism.

The publication of the Final Rule also highlighted the Defendants' failure to adequately address significant public comments.  In particular, Defendants failed to address the following

1   Plaintiffs' comments: (i) the proposed certification shifted the burden of demonstrating non-

2   compliance to individual petitioners; (ii) the proposed rule did not address the requirements for a

3   state's request and the lack of opportunity for the public to meaningfully participate in the

4   certification process; (iii) the failure to publish denials of certification; and (iv) the failure to

5   provide procedural regularity to protect against the risk of bias.

6         **D.**      **The Impact Of The 2013 Final Rule**

7         Once a state is certified, then the statute of limitations for federal habeas corpus

8   proceedings is "fast-tracked."  In particular, the following deadlines are shortened:

9
10  - The statute of limitations for filing a habeas petition in federal court is shortened from one year to 180 days.  28 U.S.C. § 2263(a).

11
12  - Tolling of the statute of limitations is altered to exclude (1) the period of time between the finality of direct review in state court to the filing of a petition for writ of certiorari in the United States Supreme Court and (2) the filing of exhaustion or successive state habeas petitions.  28 U.S.C. § 2263(b).
13

14  - Limitations on a petitioner's ability to amend a petition.  28 U.S.C. § 2266(b)(3)(B).

15  - Adjudication of petitions subject to Chapter 154 shall be given priority in the federal district court and court of appeals over all non-capital matters.  28 U.S.C. § 2266(a).
16

17  - A federal district court must enter final judgment on a habeas petition within 450 days of the filing of the petition, or 60 days after it is submitted for decision—whichever is earlier.  28 U.S.C. § 2266(b).
18

19        Additionally, the statute is retroactive, reaching back to the date the qualifying mechanism

20  is established.  The retroactive effect of the statute creates much legal uncertainty.  For example,

21  because the Final Rule does not require states to indicate when their qualifying mechanism was

22  established, habeas petitioners will not know the date of when the statute will begin to run until

23  the certification is granted.  Thus, the onus will be on the petitioners to prepare their federal

24  habeas challenges while waiting in limbo as to a date certain of when the statute will begin to run.

25        The harm that Plaintiffs face has already been seen with the State of Arizona's request for

26  certification prior to the Final Rule.  Baich Decl. ¶¶ 7-8, Ex. E.  When FDO-AZ learned of this

27  action, it wrote to the Attorney General to formally request notification of any communication

28  between the DOJ and the Arizona Attorney General's office.  *Id.*, Ex. F.  On July 16, 2013 (more

      - 5 -      

1   than two months prior to the publication of the Final Rule), the DOJ informed Arizona that it

2   would review the state's application immediately. *Id.,* Ex. G.  In contrast, the Attorney General

3   never responded to FDO-AZ or provided a copy of the response to Arizona. *Id.* ¶ 8.

4   　　　Because numerous deficiencies in the Final Rule cause unnecessary uncertainty about the

5   requirements for certification, and implementation of the flawed rule will significantly impact

6   Plaintiffs' ability to advise their clients, Plaintiffs filed this action on September 30.  Teshima

7   Decl. Ex. C.  Plaintiffs require immediate injunctive relief, staying the October 23, 2013 Effective

8   Date of the Final Rule pending resolution of this litigation.  The implementation of the Final Rule

9   and the threat of the certification pursuant to an unlawful certification procedure will result in

10  confusion as to whether and when petitioners' habeas petitions will become time-barred.

11  Additionally, because of the significant shortening of deadlines and limitations in amending

12  petitions, the development and exhaustion of potentially meritorious claims may be significantly

13  curtailed so that petitioners can ensure that their petitions are timely.  The difficulty in advising

14  Plaintiffs' clients in this uncertain landscape warrants immediate relief.

15  　　　**E.**　　　**Plaintiffs' Efforts To Meet And Confer With Defendants**

16  　　　On September 30, Plaintiffs attempted to reach Defendants to meet and confer regarding

17  the TRO motion by calling and e-mailing the DOJ's listed contact for the Final Rule, Robert

18  Hinchman.  Teshima Decl. ¶ 7, Ex. F.  Because Mr. Hinchman did not reply, Plaintiffs contacted

19  counsel for Defendants in the prior litigation regarding the 2008 Rule.  Because of the

20  government shutdown, Plaintiffs agreed to wait to serve the complaint and file this application for

21  TRO until the parties were able to speak later in the week. *Id.*

22  　　　On October 3, the parties met and conferred regarding Plaintiffs' complaint and TRO

23  motion. *Id.* ¶ 8.  Plaintiffs sought Defendants' agreement to postpone the Effective Date of the

24  Final Rule until this Court could rule upon Plaintiffs' preliminary injunction motion.  Defendants

25  did not agree to this proposal. *Id.*  Plaintiffs then gave notice to Defendants telephonically and

26  via e-mail that Plaintiffs would file this application for TRO on October 4, 2013. *Id.*; Ex. F.

27

28

1   **III.    LEGAL STANDARD**

2           **A.      Preliminary Injunction**

3           A preliminary injunction is appropriate where (1) the plaintiff is likely to succeed on the

4   merits of the claim, (2) the plaintiff is likely to suffer irreparable harm absent injunctive relief,

5   (3) the balance of equities tips in the plaintiff's favor, and (4) the injunction is in the public

6   interest. *Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008).  The standard that

7   governs the issuance of a temporary restraining order is "substantially identical." *Stuhlbarg Int'l*

8   *Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001); Fed. R. Civ. P. 65(b).

9   Injunctive relief precluding enforcement and implementation of agency regulations like the Final

10  Rule is particularly appropriate where such regulations are arbitrary, capricious, in excess of

11  statutory authority, or otherwise not in accordance with law.  *See, e.g*., *Earth Island Inst. v.*

12  *Ruthenbe*ck, 490 F.3d 687, 699 (9th Cir. 2007) (rejecting agency attempt to limit district court's

13  nationwide injunction); *Walters v. Reno*, 145 F.3d 1032, 1049 (9th Cir. 1998) (upholding

14  injunction to reopen administrative proceedings to remedy inadequate notice).

15          **B.      Administrative Procedure Act And Due Process Clause**

16          Plaintiffs allege five causes of action under the APA and the Due Process Clause of the

17  U.S. Constitution.  Under the APA, a court shall "hold unlawful and set aside agency actions,

18  findings, and conclusions found to be: (a) Arbitrary, capricious, an abuse of discretion, or

19  otherwise not in accordance with law; (b) Contrary to constitutional right, power, privilege, or

20  immunity; (c) In excess of statutory jurisdiction, authority, or limitations, or short of statutory

21  right; and (d) Without observance of procedure required by law.  5 U.S.C. § 706(2).  The statute

22  further requires that "the court shall review the whole record."  *Id.*

23          The Due Process Clause requires that interested parties have adequate notice and an

24  opportunity to respond.  "Parties whose rights are to be affected are entitled to be heard; and in

25  order that they may enjoy that right they must first be notified." *Hamdi v. Rumsfeld*, 542 U.S.

26  507, 533 (2004).  A trial court reviews an agency's action for violations of due process without

27  any deference to the agency. *Ramirez-Alejandre v. Ashcroft*, 320 F. 3d 858, 869 (9th Cir. 2003).

28

## IV.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A.  Defendants Have Violated The Administrative Procedures Act And The Due Process Clause By Failing To Provide Adequate Notice Of The Final Rule

The APA "requires an agency conducting notice-and-comment rulemaking to publish in its notice of rulemaking 'either the terms or substance of the proposed rule or a description of the subjects and issues involved.'" *Long Island Care at Home, Ltd. v. Coke*, 127 S. Ct. 2339, 2351 (2001) (quoting 5 U.S.C. § 553(b)(3)).  Because the Attorney General's promulgation of the Final Rule constitutes administrative rulemaking with notice in the Federal Register and public comment, it must comply with the rule making provisions of the APA.  *See* 5 U.S.C. § 553.  The rulemaking process requires notice that (1) includes "either the terms or substance of the proposed rule or a description of the subjects and issues involved"; and (2) gives "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  *Id.* §§ 553(b), (c).  To determine whether the Attorney General so complied, this Court must inquire whether '"the notice fairly apprise[s] interested persons of the subjects and issues before the Agency.'  . . . An interested member of the public should be able to read the published notice of an application and understand the essential attributes of that application and should not have to guess the agency's true intent."  *E.g.*, *Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 975-76 (9th Cir. 2005) (finding Department of Labor's rulemaking violated APA where agency never proposed to exempt systems from access).

Just as the APA requires the Attorney General to provide adequate notice in the rulemaking process, the Due Process Clause "requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *accord Williams v. Mukasey*, 531 F.3d 1040, 1042 (9th Cir. 2008).

The Attorney General failed to comply with either the APA or the Due Process Clause in promulgating the Final Rule.  Without prior notice, the Attorney General published a rule in which he explained for the first time ever that (1) he did not consider the certification decision a rule subject to the APA and (2) in making certification decisions, he would privately collect

1    information from state attorneys general to use in making the certification decision.  *Compare*

2    Certification Process for State Capital Counsel Systems, 76 Fed. Reg. 11,705 (proposed March 3,

3    2011) (to be codified at 28 CFR pt. 26) and Certification Process for State Capital Counsel

4    Systems, 77 Fed. Reg. 7559 (proposed Feb. 13, 2012) (to be codified at 28 CFR pt. 26) *with* Final

5    Rule.

6           As a consequence of adopting these unforeseen positions, interested parties were denied

7    an opportunity to explain, through public comments, why the Attorney General's stance on them

8    is unlawful and inequitable.  When an agency fails to notify interested parties of its position, its

9    notice of proposed rulemaking has not "'provide[d] sufficient factual detail and rationale for the

10   rule to permit interested parties to comment meaningfully,'" *Honeywell Int'l, Inc. v. EPA*, 372

11   F.3d 441, 445 (D.C. Cir. 2004) (citation omitted), or "an opportunity to present their objections."

12   *Jones*, 547 U.S. at 226.

13          **B.      Defendants Violated The Administrative Procedure Act By Failing To**
                      **Respond To Significant Public Comments**
14

15          When promulgating a regulation, an agency must explain the purpose and justification for

16   the proposed rule and, in arriving at its final decision, "must state why the criticisms it received

17   were invalid 'where apparently significant information has been brought to its attention, or

18   substantial issues of policy or gaps in its reasoning raised . . . .'"  *Gamboa v. Rubin*, 80 F.3d 1338,

19   1346 (9th Cir. 1996) (citation omitted), *vacated on jurisdictional grounds*, 101 F.3d 90 (9th Cir.

20   1996); *Interstate Natural Gas Ass'n v. FERC*, 494 F.3d 1092, 1096 (D.C. Cir. 2007) (ruling that

21   agency has "duty to give reasoned responses to all significant comments").

22          An agency "is required to give reasoned responses to all significant comments in a

23   rulemaking proceeding."  *Int'l Fabricare Inst. v. U.S. EPA*, 972 F.2d 384, 389 (D.C. Cir. 1992)

24   (overturning rulemaking as arbitrary and capricious where agency "failed to respond to specific

25   challenges that are sufficiently central to its decision").  Reversal is warranted when the failure to

26   respond "reveals that the agency's decision was not based on consideration of the relevant

27   factors."  *Am. Min. Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992); *Appalachian Power Co. v.*

28   *EPA*, 249 F.3d 1032, 1063 (D.C. Cir. 2001) (invalidating rule for agency's failure to respond to

1    significant comments; lack of response leaves court "only to guess whether its decision was based

2    on a consideration of the relevant factors") (internal quotation marks omitted).  In issuing the

3    Final Rule, the Attorney General completely failed to respond adequately to numerous public

4    comments.

5           First, Plaintiffs explained that, pursuant to Chapter 154 and binding precedent, it is the

6    states, as applicants, that bear the burden of demonstrating existence and compliance with specific

7    standards.  Comment by HCRC, Dep't of Justice Docket No. DOJ-OAG-2012-0002-0028 at 9–10

8    ("2012 HCRC Comment"); Federal Defenders Comment, Dep't of Justice Docket

9    No. DOJ-OAG-2012-0002-0020 at 5–6 ("2012 FDO-AZ Comment").  Where, as here, the

10   certification procedure does not require any showing of a state applicant, it (1) improperly shifts

11   the burden by requiring individuals opposed to certification to demonstrate a state's

12   noncompliance, (2) leads to forced compliance with Chapter 154 (notwithstanding

13   noncompliance), and (3) shifts the responsibility of identifying systemic failures in the state

14   mechanism to federal courts.  *Id*.  Though these concerns are significant, nowhere did the Final

15   Rule ever address them.

16          Second, Plaintiffs commented that the failure to publish denials of certification is contrary

17   to 5 U.S.C. § 555(e) and to the requirements of rulemaking, which require public notice of an

18   agency's decision.  2012 HCRC Comment at 21.  In particular, Plaintiffs explained that § 555(e)

19   requires "'[p]rompt notice shall be given of the denial in whole or in part of a written application,

20   petition, or other request of an interested person made in connection with any agency

21   proceeding.'"  *Id*.  Although the Final Rule offers equitable explanations for why the Attorney

22   General does not believe it is necessary to publish certification denial, it does not respond to

23   Plaintiffs' comment that the Attorney General has a statutory obligation to do so.  78 Fed. Reg. at

24   58,175 (concluding simply that the "comments do not persuasively establish that the rule should

25   be changed to require uniformly that the Attorney General publish denials of certification in the

26   Federal Register.").

27          Similarly, Defendants failed to adequately address the significant public comments that

28   there must be, at a minimum, some requirements, other than a mere "written request," regarding

1    the information a state submits in requesting certification.  While Defendants explained that

2    "States will be free to present any and all information they consider relevant or useful," 78 Fed.

3    Reg. 58,174, Defendants did not adequately address why no requirements for a certification

4    request were provided.  Additionally, Defendants fail to adequately address why the agency has

5    declined to modify the rule as required by the APA.  *Gamboa,* 80 F.3d at 1346.

6         Plaintiffs also raised concerns about the lack of notice and fair opportunity to participate

7    in certification because the proposed rule did not identify any "criteria to indicate what type of

8    information will be considered [by the Attorney General] in granting or denying [certification]

9    application[s]."  2012 HCRC Comment at 19; 2012 FDO-AZ Comment at 17.  Without providing

10   a reasoned response, the Final Rule simply states that "[t]he comments provided no persuasive

11   reason to believe that the rule's procedure . . . will be inadequate to provide the information

12   needed for the determinations that the Attorney General actually must make."  78 Fed. Reg. at

13   58,174 (stating that certification is an order and not a rule for purposes of the APA); *see also id.*

14   (repeating that the "comments provided no persuasive reason for an across-the-board imposition

15   of more definite informational requirements").

16        Additionally, the comments detailed the need for procedural regularity and transparency

17   to combat the appearance of bias.  2011 HCRC Comment at 8.  Although the Final Rule discusses

18   actual bias, the remedies of delegating to the Inspector General, and the use of more specific

19   decisional criteria, it does not respond to these critically distinct concerns.  78 Fed. Reg. at

20   58,163-64.

21   **C.    The Final Rule's Procedurally Deficient Certification Process Is Arbitrary
            And Capricious, Is Contrary To Congressional Intent, And Has Violated The
22          Due Process Clause**

23        The Final Rule lacks critically important procedural components in violation of the APA

24   and the Due Process Clause.  In particular, the Final Rule (i) unlawfully claims exemption from

25   the APA's rulemaking requirements, (ii) allows a state to apply for certification without anything

26   more than a "request in writing," (iii) does not provide notice of the state's asserted basis for

27   eligibility and an opportunity to contest it, (iv) fails to provide notice of certification denials, and

28   (v) unlawfully shifts the burden of proof from the state to interested parties.

1.      **The Attorney General's Determination that Certification Does Not Constitute Rulemaking Contravenes the APA**

The APA sets out particular requirements to which agencies must adhere in proposing and establishing regulations; they apply with particular force to both agency rulemaking and formal adjudications.[1]  *See* 5 U.S.C. §§ 553, 554.  In the Final Rule, the Attorney General asserted that its certification determinations constitute orders, not rules, and therefore are not subject to the APA requirements governing rulemaking or those governing "adjudication required to be made or determined on the record after opportunity for an agency hearing."  78 Fed. Reg. at 58,174.  In other words, they are not subject to the APA's public notice and comment procedures.

The Attorney General's characterization of its certification determination misapprehends the nature of its inquiry.  In *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994), the Ninth Circuit offered the following distinctions between rulemaking and adjudication: (1) the latter "resolve[s] disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals" and (2) in contrast with rulemaking, which has a prospective effect on individuals, adjudication "involve(s) concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute)." *Id.* at 448 (*citing Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 216-17 (1988)); *see Cal. ex rel. Harris v. Fed. Hous. Fin. Agency*, C 10-03084 CW, 2011 WL 3794942 (N.D. Cal. Aug. 26, 2011) (Wilken, J.) (rejecting agency claim that letters affecting government financing of energy conservation were orders not subject to notice and comment and applying *Yesler*).

When a state applies for certification, the Attorney General's determination does not impact a single individual but rather a broad class of people—current as well as future death row litigants throughout the particular applicant state.  Likewise, the effect of the Attorney General's decision is prospective only and has no immediate effect on those involved in the dispute—the Attorney General, the state's attorney general or the state itself.  Accordingly, the Attorney General's certification decision constitutes rulemaking and is thus subject to all of the APA's

---

[1] The APA also applies to informal adjudications but the procedural requirements are more minimal.  *See* 5 U.S.C. § 555; *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655 (1990) (holding that minimal requirements for informal adjudication are set out in section 555).

1    procedural requirements.

2         **2.      The Certification Process Unlawfully Fails to Require Anything More Than A "Request in Writing"**

3

4         The certification process begins when a state "request[s] in writing that the Attorney

5    General determine whether the State meets the requirements for chapter 154 certification."

6    78 Fed. Reg. at 58,174.  The Final Rule provides no other guidance regarding the contents of the

7    writing or what information the Attorney General will evaluate when a State submits a

8    certification request.

9         Agency promulgation of a Final Rule is arbitrary and capricious when the agency

10   "entirely failed to consider an important aspect of the problem, offered an explanation for its

11   decision that runs counter to the evidence before the agency, or is so implausible that it could not

12   be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs.*

13   *Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Pearson v. Shalala*, 164 F. 3d

14   650, 660 (D.C. Cir. 1999) (failure to provide "definitional content" is arbitrary and capricious).  A

15   reviewing court must assess "'whether the decision was based on a consideration of the relevant

16   factors and whether there has been a clear error of judgment.'"  *Judulang v. Holder*, __ U.S. __,

17   132 S. Ct. 476, 484 (2011) (citation omitted); *see also id.* at 490 ("[w]e must reverse an agency

18   policy when we cannot discern a reason for it.").

19        The Attorney General's use of an undefined "request in writing" as the basis of the

20   certification process does not require a state seeking certification to provide the Attorney General

21   with *any* information about the state mechanism or the basis of the state's eligibility for

22   certification—much less specific, relevant facts about the appointment of counsel, state

23   competency standards, compensation, payment of litigation expenses, and the functioning of

24   those required features in practice—that the Attorney General must consider in making a

25   certification decision.  The certification process in the Final Rule therefore is arbitrary and

26   capricious because it inexplicably fails to consider and address relevant factors about the state's

27   eligibility for certification, and is unrelated to the requirements of Chapter 154 and the proper

28   balancing of interests that the statute requires.  5 U.S.C. § 706(2)(A); *see Sierra Club v. EPA,*

1   671 F.3d 955, 963 (9th Cir. 2012) (holding that where EPA did not obtain available, relevant data

2   prior to approving state air quality plan, agency decision was arbitrary and capricious); *Exxon v.*

3   *FERC*, 182 F.3d 30, 40 (D.C. Cir. 1999) (holding use of proxy valuation for residual fuel oil

4   arbitrary and capricious because it did not "bear a demonstrated relationship to the value of

5   resid[ual]"); *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 923 (D.C. Cir. 1998) (holding

6   agency procedure arbitrary and capricious for relying on model that "'bears no rational

7   relationship to the reality it purports to represent.'") (citation omitted).

8       Additionally, the certification process in the Final Rule does not set forth any procedure

9   by which the Attorney General may obtain and consider information relevant to the certification

10  decision (although it appears that at least with the State of Arizona's request for certification,

11  there will be *ex parte* communications with the state).  *See, e.g.*, Baich Decl. Ex. G.  Although the

12  certification process allows for public comment on the state's request, 78 Fed. Reg. at 58,184, this

13  is a pointless exercise because the state's request need not contain any relevant substance to

14  which the public can respond.  The Attorney General's scheme in the Final Rule is not a "rational

15  way" to approach a decision with such grave, literally life-or-death, implications for those

16  affected by it, *Judulang*, 132 S. Ct. at 484, and is "so implausible that it could not be ascribed to a

17  difference in view or the product of agency expertise."  *Mount Diablo Hosp. v. Shalala*, 3 F.3d

18  1226, 1232 (9th Cir. 1993).

19              **3.     The Certification Process Fails to Provide Appropriate Notice
                         Regarding State Certification**
20

21      As discussed above, the certification process constitutes rulemaking, *see supra* § IV.C.1,

22  and, as such, under the APA, must give "interested persons an opportunity to participate in the

23  rule making through submission of written data, views, or arguments."  5 U.S.C. § 553(c).

24  Likewise, the Due Process Clause requires that "[p]arties whose rights are to be affected are

25  entitled to be heard; and in order that they may enjoy that right they must first be notified."

26  *Hamdi*, 542 U.S. at 533 (internal quotations marks omitted).

27      Notwithstanding these requirements, the only notice the public receives under the Final

28  Rule is that a state has applied for certification.  78 Fed. Reg. at 58,180.  Notice, under the Final

1    Rule, need not include any factual basis for the state's asserted eligibility for certification, or, for

2    that matter, any information relevant to the Attorney General's certification decision.  By failing

3    to require disclosure of critical information concerning the basis upon which the Attorney General

4    will make his certification decision, interested parties are denied any meaningful opportunity to

5    challenge the state's certification request and thus participate in the process.   *Portland Audubon*

6    *Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (an agency must make

7    public "everything that was before the agency pertaining to the merits of its decision."); *Nat'l*

8    *Black Media Coal. v. FCC*, 791 F.2d 1016, 1023-24 (2d Cir. 1986) (holding agency action

9    arbitrary and capricious for failure to provide public with information relied upon for its

10   conclusions).

11           This inconsistent and opaque approach also violates the Due Process Clause because

12   agencies are required to establish a consistent method for the presentation of relevant information

13   and are thus prohibited from engaging in an "ad hoc, case-by-case approach" to their decision

14   making.  *Ramirez-Alejandre v. Ashcroft*, 320 F.3d at 866 (holding that BIA violated applicant's

15   due process rights when it "decided if and when it would accept evidence on a haphazard,

16   irregular basis, without any written regulation or procedure").  The State of Arizona's

17   certification request highlights the Defendants' flawed approach to evaluating certification

18   requests on a state-by-state basis.  *See* Baich Decl. Exs. E-G.  Because the Rule does not impose

19   any particular requirements upon what information a state must submit to demonstrate

20   compliance and there are no set parameters for what information the Attorney General will or

21   must request in making his certification determination, the decision whether to grant or deny

22   certifications will inevitably be unlawfully haphazard.

23           Similarly, the Final Rule is also deficient because it fails to provide the appropriate notice

24   regarding (i) denials of certification and (ii) states that the Attorney General's certification

25   determination will be published only if certification is granted.  78 Fed. Reg. at 58,184.  This is

26   contrary to the procedural requirement that "[p]rompt notice shall be given *of the denial* in whole

27   or in part of a written application, petition, or other request of an interested person made in

28   connection with any agency proceeding." 5 U.S.C. § 555(e) (emphasis added).  Full justification

1    for granting or denying a request for certification must be made public, as well as all information

2    relied upon by the Attorney General in doing so.  *See, e.g.*, *Portland Audubon Soc'y*, 984 F.2d at

3    1548-49.  By failing to afford notice of certification denials, the Attorney General deprives

4    interested persons important information about the Attorney General's approach to sufficiency of

5    a state's mechanism—information that could help alleviate harmful uncertainty about the

6    potential certification of other states.  Furthermore, the lack of notice regarding denials has the

7    potential to leave death-sentenced prisoners and their attorneys in those states that have applied

8    for certification guessing whether a decision remains pending and whether litigation decisions

9    should be altered to comply with Chapter 154 out of an abundance of caution.

10           **4.      The Certification Process Unlawfully Shifts the Burden of Proof from
11                     the State to Interested Parties**

12           The legislative history, purpose, and judicial construction of Chapter 154 establish that a

13   state applying for the benefits of Chapter 154 bears the burden of demonstrating the state's strict,

14   actual compliance with the statute's requirements.  The Powell Committee recognized from the

15   outset that such opt-in provisions would not be generally applicable but would require that states

16   seeking expedited post-conviction review "take[]the affirmative steps required" by statute to so

17   qualify."  Powell Committee Report at *S13483.  And "as the party seeking to obtain the benefit

18   of Chapter 154's expedited review provisions," this Court has recognized that (1) "the burden is

19   properly placed on the state to demonstrate that all of the qualifying procedures have been

20   established" and (2) that burden requires demonstrating "strict rather than substantial compliance

21   with all preconditions."  *Ashmus v. Calderon*, 31 F. Supp. 2d 1175, 1182-83 (N.D. Cal. 1998).

22   The Ninth Circuit is in agreement.  *Ashmus v. Woodford*, 202 F.3d 1160, 1164 (9th Cir. 2000)

23   (prohibiting expedited review until the state "affirmatively establishes that it has satisfied each

24   condition in the federal statute"); *see also Spears v. Stewart*, 267 F.3d 1026, 1034 (9th Cir. 2001)

25   (holding that state bears burden of demonstrating compliance with Chapter 154).  Although the

26   Attorney General now has responsibility for making certification decisions, nothing in the Patriot

27   Act amendments relieved the states of their burden of demonstrating compliance.

28           Under the Final Rule, a state is not required to make any showing that it complies with

1    Chapter 154.  78 Fed. Reg. at 58,162, 58,178-79, 58,183-84.  Once a state initiates a request for

2    certification, it is incumbent on death-sentenced prisoners to show, during the certification

3    process, that in the particular state the mechanism is not adequate (in which case the state should

4    not be certified)—without, apparently, any indication whether the Attorney General has

5    determined that the state mechanism presumptively complies with Chapter 154 or fails to meet its

6    requirements.  Alternatively, or additionally, during federal habeas review, state prisoners must

7    show that the mechanism was not in fact applied properly to his or her particular case.

8    Accordingly, the Final Rule impermissibly relieves the states of their burden by (1) allowing them

9    to apply for certification without any showing of eligibility and (2) placing the burden of proving

10   the state's ineligibility for certification on affected parties.

11          In doing so, the Final Rule violates the APA and is invalid because, as discussed above, it

12   is "contrary to clear congressional intent."  *Chevron v. Natural Res. Def. Council*, 467 U.S. 837,

13   843 n.9 (1984) ("[i]f a court, employing traditional tools of statutory construction, ascertains that

14   Congress had an intention on the precise question at issue, that intention is the law and must be

15   given effect."); *see also, e.g.*, *Eisinger v. Fed. Labor Relations Auth.*, 218 F.3d 1097, 1105 (9th

16   Cir. 2000) (holding collective-bargaining regulations invalid as contrary to clear, unambiguous

17   intent of Congress).  The Final Rule is arbitrary and capricious because it provides no rational

18   justification for departing so dramatically from Congressional intent and the purpose of Chapter

19   154.  *Judulang*, 132 S. Ct. at 485.

20                    **5.    The Certification Process Fails to Allow Interested Parties to Petition
                              for Repeal of Certification**
21

22          Under the Final Rule, if a state qualifies for certification, it "remains effective for a period

23   of five years after the completion of the certification process."  78 Fed. Reg. at 58,184.  This

24   means that even if a state alters its post-conviction process such that it no longer employs or

25   utilizes the mechanism upon which it represented compliance with Chapter 154, it will remain

26   certified.  This provision is directly contrary to the requirements of the APA, which provide that

27   an agency "shall give an interested person the right to petition for the . . . repeal of a rule."

28   5 U.S.C. § 553(e).  In the absence of an opportunity to establish that the state mechanism is no

1   longer in compliance with Chapter 154, Plaintiffs' clients and other death row inmates will be

2   forced to comply with the expedited deadlines even without the assistance of counsel and

3   resources required by the statute.  The failure to provide a process that allows for certification

4   repeals also is arbitrary and capricious because it fails to consider an important aspect of the

5   problem, does not provide definitional content, and is wholly irrational.  *Motor Vehicle Mfrs.*

6   *Ass'n*, 463 U.S. at 43; *Judulang*, 132 S. Ct. at 490.

7          **D.      Defendants Violated The Administrative Procedure Act By Adopting
                     Substantively Deficient Certification Requirements**

8

9          Final regulations themselves are arbitrary and capricious when they fail to provide

10  "definitional content" for terms guiding agency action implementing a statute.  *Pearson,* 164 F.

11  3d at 660.  An agency is "obliged under the APA" to give content to statutory standards it is

12  tasked with implementing, *id.* at 661, and must not leave a prospective applicant "utterly without

13  guidance as to what he must prove, and how."  *S. Terminal Corp. v. EPA*, 504 F.2d 646, 670 (1st

14  Cir. 1974).

15         Here, the Final Rule lacks definitional content because it implements a certification

16  process that fails to provide substantive criteria as to how to satisfy the requirements of

17  Chapter 154.  The standards regarding counsel competency are found in Section 26.22(b), which

18  outlines three different ways a state may satisfy its mechanism for providing competent counsel.

19  The first two counsel competency standards are based on certain criteria outlined in the Final

20  Rule including reference to the Innocence Protection Act.  The third way to satisfy counsel

21  competency is a broad "catch-all" clause that allows a state to be certified if the competency

22  standards "reasonably assure a level of proficiency appropriate for State post-conviction litigation

23  in capital cases."  78 Fed. Reg. at 58,162.  By allowing such a broad exception to the competency

24  standards, the Final Rule provides no clear and transparent guidelines as to what constitutes

25  counsel competency.  Under these circumstances, the "'agency's failure to state its reasoning or

26  to adopt an intelligible standard is so glaring that we can declare with confidence that the agency

27  action was arbitrary and capricious.'"  *Checkosky v. SEC*, 139 F.3d 221, 226 (D.C. Cir. 1998).

28

1    **E.    Defendants' Involvement In The Rulemaking And Certification Processes**
2         **Violates The Due Process Clause**

3         "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*,

4    349 U.S. 133, 136 (1955).  The Due Process Clause is therefore violated when a decision maker

5    resolves a dispute in which he or she has a vested personal or professional interest in the outcome.

6    *E.g., Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009); *Aetna Life Ins. Co. v.*

7    *Lavoie*, 475 U.S. 813, 824 (1986); *Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of*

8    *Berkeley*, 114 F.3d 840, 844 (9th Cir. 1997); *Walker v. City of Berkeley*, 951 F.2d 182, 185 (9th

9    Cir. 1991).  This requirement of impartial decision-making extends to the Attorney General's

10   rulemaking and certification decisions.  *See, e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)

11   (holding due process applicable to adjudication by an administrative agency); *Stivers v. Pierce*,

12   71 F.3d 732, 741 (9th Cir. 1995) (holding fair tribunal requirement applicable to "administrative

13   agencies charged with applying eligibility criteria for licenses").

14        The Attorney General's conflicting professional obligations resulted in bias rulemaking

15   and create an impermissible risk of biased certification determinations.  Pursuant to the Patriot

16   Act amendments, the Attorney General is charged with creating rules that govern the certification

17   process and making certification decisions.  However, as discussed by numerous commentators,

18   including a group of ethics law professors, he is unable to either impartially define the appropriate

19   protocol or decide whether states provide for adequate post-conviction protections because he

20   labors under an ongoing duty to pursue lower standards of representation for defense counsel.

21   HCRC Comment, Dep't of Justice Docket No. DOJ-OAG-2011-0004-0022 at 6 (listing amicus

22   briefs in which the Attorney General has advocated for lesser protections for death row inmates);

23   Lawrence J. Fox Comment, Dep't of Justice Docket No. DOJ-OAG-2011-0004-0031 at 3–4.

24        The Attorney General's support for states' interests in limitations on federal habeas

25   review also precludes him from objectively determining the appropriate framework for making

26   certification decisions and deciding whether states should be granted certification.  *See, e.g.*, Brief

27   for the United States as Amicus Curiae Supporting Petitioner (Warden), *Mayle v. Felix*, 545 U.S.

28   644 (2005) (No. 04-563), 2005 WL 435884, at *21 (expressing concern that collateral review

1    undermines states' interests in finality).  Indeed, a common theme in the Attorney General's

2    habeas corpus advocacy is the importance of deference to the good-faith efforts of the states in

3    constitutional matters.   Brief for the United States as Amicus Curiae Supporting Respondent

4    (Warden), *Fry v. Pliler*, 551 U.S. 112 (No. 06-5247), 2007 WL 697886, at *9-10; Brief for the

5    United States as Amicus Curiae Supporting Respondent (Secretary, Florida Department of

6    Corrections), *Gonzales v. Crosby*, 545 U.S. 524 (2005) (No. 04-6432), 2005 WL 760331, at *21.

7            Congress has itself recognized that, given his role as a prosecutor, the Attorney General is

8    not equipped to objectively assess state compliance with a mechanism for supplying competent

9    defense representation.  Sen. Comm. on the Judiciary, Innocence Protection Act of 2002, S. Rep.

10   107-315 at 30 (2002); *see also* 42 U.S.C. § 14163d (a)(4) (shielding the Attorney General from

11   direct and sole authority for evaluating state compliance with grant program designed to provide

12   competent defense counsel).  That the Attorney General labors under an inherent institutional bias

13   that precludes him from making objective determinations is evidenced by the numerous

14   deficiencies in the Final Rule as well as his willingness to accept *and begin reviewing* the State of

15   Arizona's premature certification application, while ignoring a request from Plaintiff FDO-AZ for

16   notice of communication about that process.  *See* Baich Decl. ¶¶ 7-8 and Ex. G (DOJ writing to

17   Arizona that the DOJ will review Arizona's request and will "seek to ascertain whether there is

18   any additional information that [Arizona] can provide now").

19           The failure to implement further procedural safeguards that would help rein in the

20   Attorney General's decision-making discretion—such as disclosing the information the Attorney

21   General will consider in making the certification decision, allowing interested parties to comment

22   on that information, and employing clear guidelines and a neutral fact finder in making the

23   certification decision—exacerbates the impermissible risk of bias.  *See, e.g.*, *In re Murchison*,

24   349 U.S. at 138 (holding due process violated by decision maker who based judgment on his

25   "impression [from private interviews], the accuracy of which could not be tested by adequate

26   cross-examination"); *Wildberger v. Am. Fed'n of Gov't Emps., AFL-CIO*, 86 F.3d 1188, 1196

27   (D.C. Cir. 1996) (holding that lower court erred for not focusing "on the risk of bias present in the

28   procedures employed," and that due process was violated where potentially biased decision maker

1    conducted  inquiries instead of using impartial committee to make recommendations).  In the

2    absence of these objective procedural guidelines, the Attorney General is afforded wide

3    discretion—discretion that allows his bias to consciously or subconsciously infuse the process.

4    **V.      PLAINTIFFS WILL BE IRREPARABLY HARMED WITHOUT INJUNCTIVE
          RELIEF**

5

6        Plaintiffs and their clients will be irreparably harmed if the Final Rule is allowed to take

7    effect.  The ambiguity created by the Final Rule, as detailed above, forces Plaintiffs to make

8    immediate decisions about litigation, resources, and advisory decisions even though they are

9    unable to reasonably evaluate when and if their respective states will be certified.  *See, generally*,

10   Laurence Decl. ¶¶ 13-16 (summary of irreparable harm to HCRC and its clients).  This harm is all

11   the more imminent since the State of Arizona has already applied for certification and the DOJ

12   responded, prior to the publication of the Final Rule, that it would begin evaluating Arizona's

13   request.  *See* Baich Decl. ¶¶ 7-8.

14       Additionally, the uncertain retroactive application of Chapter 154's shortened statute of

15   limitations requires immediate decisions about whether limited attorney and financial resources

16   should be committed in particular cases and, in some cases, development of claims to include in a

17   federal petition may be foregone in order to comply with the Chapter 154 fast-track deadlines.

18   Laurence Decl. ¶ 14.  The retroactive provision may also mean that petitioners who recently

19   entered federal court could have the truncated statute of limitations applied to their petition filing,

20   lose their ability to litigate procedurally defaulted claims, and be denied the ability to amend their

21   petitions—all without any notice that these provisions could apply to them.  *See* Baich Decl. ¶ 12.

22   The end result is that it is near impossible for Plaintiffs to provide informed legal decisions

23   because the Final Rule obscures the likelihood of certification, and therefore its potential impact

24   on particular cases.  *Id.*  The likely result of the confusion surrounding the Final Rule will be a

25   rush by petitioners to the courts to avoid the time-bar, creating a flood of litigation in federal

26   courts and placing an enormous burden on FDO-AZ, HCRC, and their clients.  *Id.* ¶ 13; *see also*

27   *generally id.* ¶¶ 6-13 (summary of irreparable harm); Laurence Decl. ¶¶ 13-15 (same).

28       This Court has already held that the inability to make informed legal decisions on behalf

1     of habeas petitioners constitutes irreparable harm.  In the order granting the preliminary

2     injunction, enjoining the Defendants from putting into effect the 2008 Regulation, this Court

3     found:

> If the rule goes into effect as planned, the mere possibility that
> California could apply for certification at any time will immediately
> thrust Plaintiff [HCRC] into uncertainty over the legal framework
> that applies to state and federal post-conviction remedies already
> being pursued on behalf of its clients.  Plaintiff will have to decide
> how best to allocate its resources and to represent its clients'
> interests while allowing for the possibility that California may
> apply for and receive certification in the near future.  If California is
> certified, the limitations period applicable to federal habeas
> petitions will be shortened from one year to six months.  Given the
> uncertainty over the retroactive effect of the new limitations period
> … Plaintiff would be forced to file on an expedited basis habeas
> petitions that were already due as of the date of the certification.

Teshima Decl. Ex. A, 2009 WL 185423, at *9.

       The irreparable harm that faces Plaintiffs has not changed from this Court's ruling in

2009.  The legal landscape created by the Final Rule remains ambiguous and results in Plaintiffs

inability to make informed decisions on behalf of their clients.  Accordingly, Plaintiffs require

immediate injunctive relief, enjoining Defendants from putting into effect the Final Rule until this

action may be resolved.  *See, e.g.*, *Garrison v. Hudson*, 468 U.S. 1301, 1302 (1984) (granting stay

to prevent harm of losing the opportunity to seek certiorari review); *Lewis v. Casey*, 518 U.S. 343,

346, 351 (1996) (inmates have a fundamental right of access to the courts); *Associated Gen.*

*Contractors v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (citing presumption

that an alleged constitutional infringement constitutes irreparable harm).

## VI.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR A GRANT OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

       The balance of equities tips heavily in favor of the Plaintiffs.  As discussed above,

Plaintiffs face considerable uncertainty regarding the state and federal post-conviction remedies

available to their clients, and will have to guess as to whether their cases will be subjected to

Chapter 154 procedures at some point in the future.  In contrast, Defendants face little, if any,

harm if the Final Rule does not go into effect as scheduled.  *See also* Teshima Decl. Ex. A, 2009

1   WL 185423, at *10 (this Court finding that Defendants will face little harm if an injunction

2   issues).  The amendments to Chapter 154 were enacted in March 2006.  Defendants did not

3   publish an initial final rule until 2008, and after withdrawing those regulations, have taken

4   approximately five more years to publish the rule at issue here.  Any additional delay pending

5   resolution of this lawsuit will not unduly burden them.  *See, e.g., Garrison*, 468 U.S. at 1302

6   (granting stay to allow opportunity to seek certiorari review outweighed six-week delay in

7   scheduled retrial for individual already incarcerated six years); *San Diegans for the Mt. Soledad*

8   *Nat'l War Mem'l v. Paulson*, 126 S. Ct. 2856, 2858 (2006) (granting injunction after finding a

9   brief delay pending expedited consideration of the case "slight").

10          Furthermore, the public interest strongly favors maintaining the status quo while the Court

11  resolves the validity of the regulations.  Allowing them to go into effect, only to later deem them

12  invalid, would be a tremendous waste of resources and time—Defendants' included—as counsel

13  litigate on behalf of affected indigent clients, states pursue certification, Defendants review

14  applications, and courts review challenges.

15  **VII.   <u>CONCLUSION</u>**

16          For the foregoing reasons, Plaintiffs respectfully request the following relief, which is

17  detailed in the accompanying proposed order:

18          1. A temporary injunction enjoining Defendants from putting into effect the Final Rule

19  pending the litigation of this action; and

20          2.  An order to show cause for a preliminary injunction hearing within the time frame

21  permitted by the applicable laws, or otherwise agreed to by the parties.

22  Dated: October 4, 2013                    ORRICK, HERRINGTON & SUTCLIFFE LLP

23

24                                            By:_____*/s/Catherine Y. Lui*_____
25                                                       CATHERINE Y. LUI
                                              Attorneys for Plaintiffs Habeas Corpus Resource
26                                              Center and the Office of the Federal Public
                                                 Defender for the District of Arizona

27

28