IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HABEAS CORPUS RESOURCE CENTER and
THE OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE DISTRICT OF
ARIZONA,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE and ERIC H. HOLDER, in
his official capacity as United
States Attorney General,

        Defendants.

_____/

No. C 13-4517 CW

ORDER GRANTING
PRELIMINARY
INJUNCTION

On October 18, 2013, the Court issued an order to show cause
why a preliminary injunction should not issue and a temporary
restraining order enjoining Defendants until November 1, 2013 from
putting into effect the rule entitled, "Certification Process for
State Capital Counsel Systems," published at 78 Fed. Reg. 58,160
(Sept. 23, 2013).  The order was issued ex parte.  Due to the
lapse in appropriations, Defendants had filed a request for a stay
and had not yet filed an opposition.  On October 23, 2013, the
parties submitted a stipulation for an extended briefing schedule
in which they agreed to extend the temporary restraining order for
an additional fourteen days.  Plaintiffs Habeas Corpus Resource
Center (HCRC)[1] and the Office of the Federal Public Defender for

_____

[1] HCRC is an entity in the Judicial Branch of the State of
California that, among other things, provides legal representation
to men and women under sentence of death in state and federal
habeas corpus proceedings. Complaint ¶ 16.

United States District Court
For the Northern District of California

the District of Arizona (FDO-Arizona)[2] seek a preliminary injunction. Defendants United States Department of Justice (DOJ) and United States Attorney General Eric H. Holder oppose the motion.[3] The motion was heard on November 14, 2013. Having considered oral argument and the papers submitted by the parties, the Court GRANTS Plaintiffs' motion.

BACKGROUND

I.   The 2013 Final Rule

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 added chapter 154 of Title 28 of the United States Code. Chapter 154 provides expedited procedures in federal capital habeas corpus cases when a state is able to establish that it has provided qualified, competent, adequately resourced and adequately compensated counsel to death-sentenced prisoners. Under the AEDPA, federal courts were responsible for determining whether states were eligible for the expedited federal procedures. The USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-174, 120 Stat. 192 (2005), amended chapter 154 to shift the eligibility determination from the federal courts to the Attorney General.

---

[2] FDO-AZ is a Federal Defender organization that operates under the authority of the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(g).  Among other things, FDO-AZ provides legal representation to indigent men and women sentenced to death. Complaint ¶ 17.

[3] On November 22, 2013, the Court granted Marc Klaas's motion to file a brief as amicus curiae.  The Court has reviewed the brief, Plaintiffs' response to it and amicus's reply.  The Court finds that the amicus brief does not alter the Court's assessment of the motion.

**United States District Court**
For the Northern District of California

In December 2008, the Attorney General published a final rule to implement the procedure prescribed by chapter 154.  On January 20, 2009, the Court granted a preliminary injunction, enjoining Defendants from putting the regulation into effect without first providing an additional comment period of at least thirty days and publishing a response to any comments received during such a period.  _Habeas Corpus Resource Ctr. v. United States Department of Justice_, 2009 WL 185423, *10 (N.D. Cal.).  On February 5, 2009, Defendants solicited further public comment on its proposed certification process.  Defendants thereafter proposed to retract the 2008 regulation pending the completion of a new rulemaking process.  _See_ 75 Fed. Reg. 29,217 (May 25, 2010).  On November 23, 2010, the Defendants published a final rule retracting the 2008 regulations.  _See_ 75 Fed. Reg. 71,353 (Nov. 23, 2010).

On March 3, 2011, the DOJ published a notice of proposed rulemaking for a new certification process.  76 Fed. Reg. 11,705.  The comment period closed on June 1, 2011.  On February 13, 2012, the DOJ then published a supplemental notice soliciting public comments on five contemplated changes.  77 Fed. Reg. 7559.  The comment period closed on March 14, 2012.  On September 2013, the Final Rule was published.

Section 26.22 of the Final Rule prescribes the standards a state must meet in order to earn certification under 28 U.S.C. §§ 2261 and 2265.  The Final Rule provides:

> § 26.22 Requirements.
>
> The Attorney General will certify that a State meets the requirements for certification under 28 U.S.C. 2261 and 2265 if the Attorney General determines that the State has established a mechanism for the appointment of

3

counsel for indigent prisoners under sentence of death in State postconviction proceedings that satisfies the following standards:
. . .
 (b) The mechanism must provide for appointment of competent counsel as defined in State standards of competency for such appointments.

   (1) A State's standards of competency are presumptively adequate if they meet or exceed either of the following criteria:

      (i) Appointment of counsel who have been admitted to the bar for at least five years and have at least three years of postconviction litigation experience.  But a court, for good cause, may appoint other counsel whose background, knowledge, or experience would otherwise enable them to properly represent the petitioner, with due consideration of the seriousness of the penalty and the unique and complex nature of the litigation; or

      (ii) Appointment of counsel meeting qualification standards established in conformity with 42 U.S.C. 14163(e)(1) and (2)(A), if the requirements of 42 U.S.C. 14163(e)(2)(B), (D), and (E) are also satisfied.

   (2) Competency standards not satisfying the benchmark criteria in paragraph (b)(1) of this section will be deemed adequate only if they otherwise reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases.

78 Fed. Reg. at 58,183.  The "standards established in conformity with 42 U.S.C § 14163(e)(1) and (2)(A)" referred to in section 26.22(b)(1)(ii) are provisions of the Innocence Protection Act (IPA).  They call for maintenance of a roster of qualified attorneys, specialized training programs for attorneys providing capital case representation, monitoring of the performance of attorneys who are appointed and their attendance at training programs, and removal from the roster of attorneys who fail to

deliver effective representation, engage in unethical conduct, or
do not participate in required training.  42 U.S.C.
§§ 14163(e)(2)(B),(D), and (E).

Section 26.23 of the Final Rule provides the process for a
state's certification:

> (a) An appropriate State official may request in
> writing that the Attorney General determine whether the
> State meets the requirements for certification under
> § 26.22 of this subpart.

> (b) Upon receipt of a State's request for
> certification, the Attorney General will make the
> request publicly available on the Internet (including
> any supporting materials included in the request) and
> publish a notice in the Federal Register—

> > (1) Indicating that the State has requested
> > certification;

> > (2) Identifying the Internet address at which the
> > public may view the State's request for
> > certification; and

> > (3) Soliciting public comment on the request.

> (c) The State's request will be reviewed by the
> Attorney General.  The review will include consideration
> of timely public comments received in response to the
> Federal Register notice under paragraph (b) of this
> section, or any subsequent notice the Attorney General
> may publish providing a further opportunity for comment.
> The certification will be published in the Federal
> Register if certification is granted.  The certification
> will include a determination of the date the capital
> counsel mechanism qualifying the State for certification
> was established.

> (d) A certification by the Attorney General
> reflects the Attorney General's determination that the
> State capital counsel mechanism reviewed under paragraph
> (c) of this section satisfies chapter 154's
> requirements.  A State may request a new certification
> by the Attorney General to ensure the continued
> applicability of chapter 154 to cases in which State

United States District Court
For the Northern District of California

postconviction proceedings occur after a change or alleged change in the State's certified capital counsel mechanism. Changes in a State's capital counsel mechanism do not affect the applicability of chapter 154 in any case in which a mechanism certified by the Attorney General existed throughout State postconviction proceedings in the case.

(e) A certification remains effective for a period of five years after the completion of the certification process by the Attorney General and any related judicial review. If a State requests re-certification at or before the end of that five-year period, the certification remains effective for an additional period extending until the completion of the re-certification process by the Attorney General and any related judicial review.

78 Fed. Reg. at 58,184.

II. The Impact of the 2013 Final Rule

Once a state is certified, the statute of limitations for federal habeas corpus proceedings is "fast-tracked." First, the statute of limitations for filing a habeas petition in federal court is shortened from one year to 180 days. 28 U.S.C. § 2263(a). Second, tolling of the statute of limitations is altered to exclude (1) the period of time between the finality of direct review in state court to the filing of a petition for writ of certiorari in the United States Supreme Court and (2) the filing of exhaustion or successive state habeas petitions. 28 U.S.C. § 2263(b). Third, a petitioner's ability to amend a petition is limited. 28 U.S.C. § 2266(b)(3)(B). Fourth, a federal district court must enter final judgment on a habeas petition within 450 days of the filing of the petition, or sixty days after it is submitted for decision--whichever is earlier. 28 U.S.C. § 2266(b). Finally, the certification is retroactive, reaching back to the date the qualifying mechanism is found to

have been established.  28 U.S.C. § 2265(a)(2) ("The date the mechanism described in paragraph 1(A) was established shall be the effective date of the certification under this subsection.").

LEGAL STANDARD

It is appropriate to issue a preliminary injunction if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party.  Stuhlbarg Intern. Sales Co. v. John D. Brush and Co., 240 F.3d 832, 839–840 (9th Cir. 2001).  "These formulations are not different tests, but represent two points on a sliding scale in which the degree of irreparable harm increases as likelihood of success on the merits decreases."  Associated Gen. Contractors of Calif. v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991) (citations omitted).  Under either formulation of the test, a party seeking a preliminary injunction always must show that a significant threat of irreparable harm exists.  American Passage Media Corp. v. Cass Communications, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985).  In addition, in the Ninth Circuit, the Court must also consider the public interest when it assesses the propriety of issuing an injunction.  Sammartano v. First Judicial District Court, 303 F.3d 959, 973 (9th Cir. 2002).

DISCUSSION

I.   Likelihood of Success on Procedural Issues

The APA "requires an agency conducting notice-and-comment rulemaking to publish in its notice of rulemaking 'either the terms or substance of the proposed rule or a description of the

subjects and issues involved.'" <u>Long Island Care at Home, Ltd. v. Coke</u>, 551 U.S. 158, 174 (2001) (quoting 5 U.S.C. § 553(b)(3)). Because the Attorney General's promulgation of the Final Rule constitutes administrative rulemaking, it must comply with the rulemaking provisions of the APA.  <u>See</u> 5 U.S.C. § 553.  To determine compliance, courts inquire whether "the notice fairly apprise[s] the interested persons of the subjects and issues before the Agency.'"  <u>Louis v. U.S. Dep't of Labor</u>, 419 F.3d 970, 975 (9th Cir. 2005).

The Court finds that Plaintiffs are likely to succeed on their claim that the Attorney General failed to provide adequate notice under the APA because he stated, for the first time in the Final Rule, that the certification decisions are not subject to the rulemaking provisions of the APA.  78 Fed. Reg. 58,174 ("[T]he Attorney General's certifications under chapter 154 are orders rather than rules for purposes of the Administrative Procedure Act (APA).  They are accordingly not subject to the APA's rulemaking provisions, <u>see</u> 5 U.S.C. § 553[.]").  Interested parties may have been denied an opportunity to comment on the Attorney General's view.  When an agency fails to notify interested parties of its position, its notice of proposed rulemaking has not "provide[d] sufficient factual detail and rationale for the rule to permit interested parties to comment meaningfully." <u>Honeywell Int'l., Inc. v. EPA</u>, 372 F.3d 441, 445 (D.C. Cir. 2004) (citation omitted).

Defendants respond that the retracted 2008 rule provided sufficient notice under the APA because the current Attorney General adhered to the position of his predecessor.  Defendants'

argument is unpersuasive.  The Attorney General published a notice of a new proposed rule that resembled the 2008 rule, but omitted its characterization of certification decisions as adjudications, not rules.  Far from alerting the public to the fact that the Attorney General adhered to this position taken by his predecessor, it is more likely that the notice of the new rule led interested parties to presume that the Attorney General intentionally removed this characterization.  See, e.g., Keene Corp. v. United States, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation and internal quotation marks omitted).

Defendants additionally contend that certification decisions are self-evidently adjudications, and thus that they were not required to provide notice of their view.  Scarce authority exists for such a contention.  As Plaintiffs note, the Attorney General's certification determinations are unlike typical APA adjudications that are individualized, including Social Security and Medicare benefits claims.  Rather, this particular certification decision "affects the rights of broad classes" of individuals and impacts such persons "after the [decision] is applied."  Yesler Terrace Cmty. Council v. Cisneros, 37 F.3d 442, 448 (9th Cir. 1994).  Further, the 2011 Proposed Rule and 2012 Supplemental Notice included indicia of rulemaking, e.g. publication and a notice and comment period.  Defendants thus have not provided authority for their claim that certification is self-evidently an adjudication.

United States District Court
For the Northern District of California

Accordingly, Plaintiffs are likely to succeed in demonstrating that Defendants were obliged to provide notice of their view that rulemaking procedures would not apply to the certification decision. See Louis, 419 F.3d at 976 (finding notice that omitted "potentially controversial subject matter" insufficient); Habeas Corpus Res. Ctr. v. U.S. Dept. of Justice, 2009 WL 185423, at *8 (N.D. Cal.) (holding that notice was inadequate when public commenters did not reflect any understanding of DOJ's controversial interpretation and likely would have disputed it had they been provided notice).

The Court concludes that the Final Rule likely did not give adequate notice of the Attorney General's view of the certification process. Accordingly, Plaintiffs are likely to succeed on the merits of this claim.

II. Likelihood of Success on the Challenges to the Final Rule

    A.   Standing

Defendants assert Plaintiffs lack standing to pursue their challenge to the substance of the Final Rule and thus cannot satisfy Article III's "case or controversy requirement." A plaintiff "has the burden of establishing the three elements of Article III standing: (1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008). "Article III standing requires an injury that is actual or imminent, not conjectural or

United States District Court
For the Northern District of California

hypothetical." <u>Cole v. Oroville Union High School Dist.</u>, 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotation marks omitted).  "A plaintiff may allege a future injury in order to comply with this requirement, but only if he or she 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.'"  <u>Scott v. Pasadena Unified School Dist.</u>, 306 F.3d 646, 656 (9th Cir. 2002) (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983)).

Defendants first incorrectly state that the Court has found that Plaintiffs lack standing with regard to substantive claims. Defs.' Resp. at 14–15.  In the prior litigation, substantive standing issues were not before this Court, because Plaintiff HCRC raised only procedural deficiencies.  <u>See</u> HCRC's Reply Br. to Opp. to Mot. for Preliminary Inj., Docket No. 71, Case No. 08-cv-02649, at 6.  Accordingly, in the prior case the Court made no finding as to substantive standing issues and found that HCRC had standing to challenge procedural defects.  <u>Habeas Corpus Res. Ctr.</u>, 2009 WL 185423, at *5.

Defendants contend that Plaintiffs lack standing because their injuries are speculative and not imminent.  According to Defendants, Plaintiffs' injuries will occur only if California or Arizona are certified.  Plaintiffs respond that "the harmful consequences of permitting the flawed rule to go into effect are not contingent on whether California will be certified, but rather upon the inability to predict whether California qualifies for chapter 154's benefits[.]"  Supplemental Declaration of Michael Laurence ¶ 3.  It is Defendants' position that the retroactive

effect of the Final Rule reaches back to the date at which the
state mechanism went into effect.  In other words, were the DOJ to
certify a state and deem a state's mechanism to have gone into
effect at a prior date, the deadline for a habeas petitioner's
application may have come and gone without his knowing it.  The
confusion caused by the claimed retroactive effect forces
Plaintiff HCRC to make urgent decisions regarding its litigation,
resources, and strategy.

Arizona has already applied for certification.  If Arizona is
certified, under Defendants' interpretation of the Final Rule,
Arizona's certification will reach back to the date when the
mechanism is found to have been established.  The uncertainty
caused by the retroactive effect of the Final Rule curtails and
disrupts FDO-Arizona's capacity to counsel its clients
meaningfully.  Declaration of Dale Baich ¶¶ 10-12.  Accordingly,
the present injury alleged by Plaintiffs is actual and
particularized, and the future injury is predictable and imminent.
As the Court has found previously, there can be little doubt that
the legal uncertainty of the retroactive effect of the new
limitations period will severely harm Plaintiffs, leaving them in
protracted legal limbo.  Docket No. 26, TRO Order at 8.
Defendants have articulated no persuasive response to suggest
otherwise.

Defendants argue next that Plaintiffs lack standing to raise
substantive claims because they do not meet the second and third
elements of Article III standing.  Defendants' argument fails.
Plaintiffs can trace their actual or future injuries to the
implementation of the Final Rule.  The implementation "will result

in known, predictable consequences" that constitute concrete injury.  City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004) (finding that plaintiff's harm was traceable to the implementation of defendant's proposed plan, and "because Sausalito's asserted injuries will not occur if the Plan is not implemented, Sausalito has alleged injury that can be redressed by a decision blocking implementation of the Plan.").  Because Plaintiffs' injuries will not occur if the Final Rule is not implemented, Plaintiffs have alleged injury that can be redressed by a decision blocking implementation of the Final Rule as written.  Id.

The Court concludes that Plaintiffs have standing to challenge the substance of the Final Rule.  First, they have alleged harm with sufficient detail to state a "concrete and particularized" injury.  Second, the injury can be traced to the proposed implementation of the Final Rule.  Third, Plaintiffs have alleged injury that can be redressed by a decision blocking implementation of the Final Rule as written.

B.   Deficient Certification Process

Under § 706(2)(A) of the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  Final regulations are arbitrary and capricious when they fail to provide "definitional content" for terms guiding agency action implementing a statute.  Pearson v. Shalala, 164 F.3d 650, 660 (D.C. Cir. 1999).  An agency is "obliged under the APA" to give content to statutory standards it is tasked with implementing.

**United States District Court**
For the Northern District of California

Id. at 661.  An agency cannot leave a prospective applicant

"utterly without guidance as to what he must prove, and how." S.

Terminal Corp. v. EPA, 504 F.2d 646, 670 (1st Cir. 1974).  "When

an agency utterly fails to provide a standard for its decision, it

runs afoul of more than one provision of the Administrative

Procedure Act. . . . An agency's failure to state its reasoning or

to adopt an intelligible decisional standard is so glaring that we

can declare with confidence that the agency action was arbitrary

and capricious." Checkosky v. SEC, 139 F.3d 221, 226 (D.C. Cir.

1998) (citation omitted).

The Court finds that Plaintiffs are likely to succeed in

demonstrating that the certification process is arbitrary and

capricious in one or more of the multiple ways they posit.

### 1. Substantive Criteria

Plaintiffs may succeed in showing that the Final Rule is

arbitrary and capricious in that it provides no substantive

criteria as to how a state may satisfy the requirements of chapter

154.  Section 26.22(b) allows a state to be certified if its

competency standards "reasonably assure a level of proficiency

appropriate for State post-conviction litigation in capital

cases." 78 Fed. Reg. 58,162.  Plaintiffs argue that this "catch-

all" provision is broad and vague.  In response, Defendants point

to other provisions in section 26.22 and argue that section

26.22(b) should not be read "in isolation."  But Defendants do not

dispute that the Attorney General can base his certification

decision on section 26.22(b) alone.  Section 26.22(b)'s vague

language does not offer meaningful notice as to how certification

decisions will be made pursuant to it.

United States District Court
For the Northern District of California

Defendants also argue that the catch-all provision gives effect to congressional intent.  According to Defendants, Congress intended that states be given "wide latitude to establish a mechanism that complies with [the statutory requirements.]"  78 Fed. Reg. 58, 162.  But latitude should not be conflated with free rein.  See Bd. of Educ. v. Rowley, 458 U.S. 76, 183 (1982) (noting that although the Education of the Handicapped Act gives states the "primary responsibility for developing and executing programs, it imposes significant requirements to be followed in the discharge of that responsibility.").

In June 1988, a committee, chaired by retired Supreme Court Justice Lewis Powell, was commissioned by Chief Justice Rehnquist to assess the delay and lack of finality in capital cases.  135 Cong. Rec. 24694 (1989), Ad Hoc Committee on Federal Habeas Corpus in Capital Cases Committee Report (Powell Committee Report).  The Powell Committee, whose proposal chapter 154 essentially codifies, explained that the "provision of competent counsel for prisoners under capital sentence throughout both state and federal collateral review is crucial to ensuring fairness and protecting the constitutional rights of capital litigants."  135 Cong. Rec. S13471-04, S13481, S13482, Powell Committee Report.  In chapter 154, Congress provided a quid pro quo design: a state receives expedited federal review in exchange for its guarantee of adequate representation in state habeas corpus proceedings.  See Ashmus v. Calderon, 31 F. Supp. 2d 1175, 1180 (N.D. Cal. 1998) aff'd sub nom. Ashmus v. Woodford, 202 F.3d 1160 (9th Cir. 2000) ("As courts have uniformly held, chapter 154 explicitly contemplates a quid pro quo relationship.").  The legislative history of chapter 154

United States District Court
For the Northern District of California

supports the principle that a regulation pursuant to it must require that a state actually uphold its end of the bargain -- to provide competent representation. The states could be afforded wide latitude in providing for competent representation in a number of specified, equivalent ways, without the latitude of specifying no requirements at all.

2. State's Obligation to Take Affirmative Steps

Plaintiffs may also succeed in showing that the Final Rule is arbitrary and capricious because it departs from chapter 154's requirement that a state take affirmative steps to prove its eligibility. One court has explained:

> "If Congress had intended to afford the States the very significant benefits conferred by Chapter 154 on the basis of a finding of substantial compliance based on past performance, it could have done so. However, it elected not to do so; and instead, Congress chose to confer those benefits only if the State made an affirmative, institutionalized, formal commitment to provide a post-conviction review system which Congress considered to be 'crucial to ensuring fairness and protecting the constitutional rights of capital litigants.' Powell Committee Report at 3240."

Ashmus, 31 F. Supp. 2d at 1183 (quoting Satcher v. Netherland, 944 F. Supp. 1222, 1243 (E.D. Va. 1996)). Ashmus found that "a state must establish a system reflecting 'an affirmative, institutionalized, formal commitment' to habeas representation," and Congress did not intend to permit procedures that "suffer from incoherence or incompleteness." Ashmus, 31 F. Supp. 2d at 1183.

Defendants respond that the Final Rule is not arbitrary and capricious because it properly places the burden on states "to demonstrate that they have established a compliant capital counsel

United States District Court
For the Northern District of California

appointment mechanism, and subjects that demonstration to public scrutiny." Defs.' Resp. at 20. Contrary to Defendants' assertion, the rule as written requires only a bare-bones request. Pursuant to the Final Rule, a state desiring certification must submit a "request in writing that the Attorney General determine whether the State meets the requirements for certification under § 26.22 of this subpart." 78 Fed. Reg. 58,184. At that point, the burden shifts to the public -- more precisely, to indigent death-sentenced prisoners -- to demonstrate that the state does not comply. A state applicant need not submit data demonstrating its record of compliance with its mechanism. See 78 Fed. Reg. 78,174 (stating that certification decision "need not be supported by a data-intensive examination of the State's record of compliance with the established mechanism in all or some significant subset of postconviction cases."). Nor must a state demonstrate that its procedures are adequate. By severely lessening a state's burden to explain how its mechanism qualifies under chapter 154, the Final Rule may depart from chapter 154's requirement that the state take affirmative steps to qualify. See Judulang v. Holder, 132 S. Ct. 476 (2011) (finding that the agency's regulation was arbitrary and capricious because it bore little relation to the purpose of the law).

3. Actual Compliance with Terms of Submitted Mechanism

The Final Rule does not require a state to show that it has actually complied with the terms of its submitted mechanism. The mere existence of state requirements for the appointment, compensation and expenses of competent counsel does not ensure that such requirements are applied and enforced in practice.

Indeed, as FDO-Arizona notes, capital prisoners generally wait more than a year and a half after state court affirmance of their convictions and sentences before state post-conviction counsel is appointed.  Public Comment of Federal Public Defender--District of Arizona (June 1, 2011), AR 583-84.

It is common sense that a state must actually comply with its own mechanism, but the history, purpose and exhaustive judicial interpretation of chapter 154 also support this view.  The Fourth Circuit put it most plainly in Tucker v. Catoe, 221 F.3d 600, 604-05 (4th Cir. 2000):

> We accordingly conclude that a state must not only enact a "mechanism" and standards for post-conviction review counsel, but those mechanisms and standards must in fact be complied with before the state may invoke the time limitations of [chapter 154].  Not only is this conclusion consistent with our precedent, but it is also consistent with common sense: It would be an astounding proposition if a state could benefit from the capital-specific provisions of AEDPA by enacting, but not following, procedures promulgated [to meet chapter 154 requirements].

The Supreme Court noted that AEDPA "creates an entirely new chapter 154 with special rules favorable to the state party, but applicable only if the State meets certain conditions."  Lindh v. Murphy, 521 U.S. 320, 326 (1997) (emphasis added).  In other words, a state may reap procedural benefits only if it has "done its part to promote sound resolution of prisoners' petitions."  Id. at 330.  See also Baker v. Corcoran, 220 F.3d 276, 286 (4th Cir. 2000) (Maryland did not qualify for chapter 154 provisions because the state's competency standards were not applied in the appointment process and the "[c]ompetency standards are

18

meaningless unless they are actually applied in the appointment

process"); Ashmus, 202 F.3d at 1168 (stating that California must

abide by its competency standards when appointing counsel and

concluding that "a state's competency standards must be mandatory

and binding if the state is to avail itself of Chapter 154"); Mata

v. Johnson, 99 F.3d 1261, 1267 (5th Cir. 1996), vacated in part on

other grounds in 105 F.3d 209 (5th Cir. 1997) (stating that

competency standards must be "specific" and "mandatory" in order

to satisfy the opt-in requirements).   Plaintiffs may succeed in

showing that the Final Rule is arbitrary and capricious for this

reason.

            4.  Effect of Common Law

    Plaintiffs may succeed in demonstrating that the Final Rule

is arbitrary and capricious because it does not address the effect

of judicial interpretation.  In spite of the considerable and

thoughtful body of law addressing chapter 154, Defendants fail to

show with any specificity how the Attorney General's certification

decision will be guided by it.  For instance, the Texas Attorney

General submitted an application on March 11, 2013, seeking

certification based on a state mechanism established in 1995.

Declaration of Michael Laurence ¶ 12, Ex. B.  Yet, the Court of

Appeals for the Fifth Circuit in Mata, 99 F.3d at 1267, has held

that the mechanism in place at that time did not comply with

chapter 154.  The Final Rule does not explain whether it will

incorporate the standards and rulings of the courts to a state's

application.

    Defendants represent in a footnote in their response brief

that the Final Rule will not invalidate prior case law.  Defs.'

Resp. at 9, n.8.  In support of this contention, Defendants cite the Final Rule: "[P]rior judicial interpretation of chapter 154, much of which remains generally informative, supports many features of this rule, as th[e] preamble documents.  To the extent the rule approaches certain matters differently from some past judicial interpretations, there are reasons for the differences." Id. (citing 78 Fed. Reg. 58,164).  The Final Rule's language addressing judicial interpretation does not provide assurance that the Attorney General will be guided by the case law addressing chapter 154 in making his certification decisions.

        5.  Ex Parte Communication

     Finally, Plaintiffs may succeed in demonstrating that the Final Rule is arbitrary and capricious because it fails to address the nature and effect of ex parte communication between the United States Attorney General and state officials.  Even before the Final Rule went into effect, Attorney General Holder and the Arizona Attorney General commenced a process of certification without notifying interested parties.  Baich Dec., Exs. E, F.  On April 18, 2013, Arizona Attorney General Tom Horne sent a letter to Attorney General Holder requesting certification of Arizona as an "opt-in" state.  Baich Dec., Ex. E.  FDO-Arizona learned of this letter only through a press release issued by the Arizona Attorney General's Office.  On June 4, 2013, FDO-Arizona wrote a letter to Attorney General Holder, referring to Horne's letter and formally requesting notification of any correspondence or communication between the DOJ and the Arizona Attorney General's Office.  Baich Dec., Ex. F.  On July 16, 2012 -- more than two months prior to the publication of the Final Rule -- the DOJ

informed Arizona that it would review the state's application immediately. In its letter to the Arizona Attorney General, the DOJ stated that it would begin reviewing Arizona's application to "help speed up the ultimate determination of the certification." Baich Dec., Ex. G. Plaintiff FDO-Arizona was not copied on the DOJ's response to Arizona and did not receive an acknowledgment of or a response to its letter and. Baich Dec. ¶¶ 7-8.

In their brief Defendants appear to contend that their private communications with state attorneys general will be merely "ministerial communications." Defs.' Resp. at 12-13. At oral argument Defendants were asked to explain the meaning of this evidently subjective term. Rather than define "ministerial," Defendants expanded their position to argue that nothing in the Final Rule prohibits Defendants from engaging in ex parte communication, ministerial or not, with state attorneys general. However, the APA's notice requirements exist to afford interested parties a meaningful opportunity to respond to agency action. Erringer v. Thompson, 371 F.3d 625, 629 (9th Cir. 2004). The Final Rule itself states that all requests will be made publicly available, making no allowance for ex parte communication. 78 Fed. Reg. 58,184. Ex parte communication excludes interested parties from offering input regarding the validity and accuracy of the undisclosed documents.

Accordingly, Plaintiffs may succeed in demonstrating that the Final Rule is arbitrary and capricious because it lacks specific guidelines addressing the DOJ's disclosure of ex parte communication with state officials. The Final Rule's failure to articulate transparent and specific parameters governing the

Attorney General's ex parte communication with state officials leaves Plaintiffs and the public in the dark, depriving them of the opportunity to offer meaningful opposition.

In sum, Plaintiffs may prevail on their claims that the Final Rule does not provide substantive criteria as to how a state may satisfy the requirements of chapter 154; shifts the burden of proof from the state to the condemned to demonstrate that the state mechanism does not qualify under chapter 154; does not require the state to show that it actually complies with the terms of its submitted mechanism; does not show with any specificity how the considerable body of law addressing chapter 154 will guide the Attorney General's certification decision; and does not address the nature and effect of ex parte communication between the Attorney General and state officials. The Court finds that Plaintiffs are likely to succeed on the merits of their claim that the Final Rule is arbitrary and capricious under the APA.

III. Irreparable Harm, Balance of Equities, and the Public Interest

Plaintiffs have demonstrated a likelihood of irreparable harm sufficient to warrant granting a preliminary injunction. Were the Final Rule to go into effect, the possibility that California could apply for certification at any time or that Arizona, which has already applied for certification, could be certified at any time will "thrust Plaintiffs into uncertainty over the legal framework that applies to state and federal post-conviction remedies already being pursued on behalf of its clients." Habeas Corpus Res. Ctr., 2009 WL 185423, at *9.

United States District Court
For the Northern District of California

Defendants' primary argument is that Plaintiffs will not suffer irreparable harm because any harm is "contingent on Arizona or California being certified under the Final Rule." As noted in connection with Plaintiffs' standing argument above, HCRC has explained that "the harmful consequences of permitting the flawed rule to go into effect are not contingent on whether California will be certified, but rather upon the inability to predict whether California qualifies for chapter 154's benefits[.]" Supplemental Laurence Dec. ¶ 3. Because the Final Rule offers few substantive criteria that illuminate whether California will be certified, HCRC is forced to revise its strategy and management of resources in anticipation of potential certification. Similarly, given the fact that Arizona has already applied for certification, FDO-Arizona is forced to prepare for the possibility of drastically expedited federal review procedures. Baich Dec. ¶¶ 10-12.

Title 28 U.S.C. § 2265(a)(2) provides that a state's certification is retroactive to the date on which its mechanism for appointing counsel was established. As discussed in the Temporary Restraining Order, the legal uncertainty of the retroactive effect of the new limitations period combined with the possibility that California could apply for certification at any time or that Arizona's pending application for certification could be approved would create serious uncertainty with respect to "the legal framework that applies to state and federal post-conviction remedies already being pursued." Habeas Corpus Res. Ctr., 2009 WL 185423 at *9.

Compared to the harm faced by Plaintiffs, Defendants stand to face little, if any, harm if the Final Rule does not go into effect immediately. The Patriot Act amendments were passed in 2005. After retracting their 2008 proposed rule in 2010, Defendants only recently attempted to revive it. An additional delay pending resolution of this lawsuit will not prejudice them. Public interest likewise favors maintaining the status quo while the legality of Defendants' rule is determined.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for a preliminary injunction. During the pendency of this litigation, Defendants are enjoined from putting into effect the rule entitled, "Certification Process for State Capital Counsel Systems," published at 78 Fed. Reg. 58,160 (Sept. 23, 2013).


IT IS SO ORDERED.


Dated: 12/4/2013

CLAUDIA WILKEN
United States District Judge

24