1  KENT S. SCHEIDEGGER (SBN 105178)
   CRIMINAL JUSTICE LEGAL FOUNDATION
2  2131 L Street
   Sacramento, CA  95816
3  (916) 446-0345 (Voice)
   (916) 446-1194 (Fax)
4  Kent.Scheidegger@cjlf.org

5  Attorney for Amici Curiae Marc Klaas and Edward G. Hardesty

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Habeas Corpus Resource Center and the Office of the Federal Public Defender for the District of Arizona<br><br>        Plaintiffs,<br>    vs.<br><br>United States Department of Justice and Eric H. Holder, in his official capacity as United States Attorney General<br><br>        Defendants. | Case No. 13-CV-4517-CW<br><br>BRIEF FOR MARC KLAAS AND EDWARD G. HARDESTY AS AMICI CURIAE OPPOSING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date:  July 31, 2014<br>Hearing Time:  2:00 p.m.<br>Judge:  Hon. Claudia Wilken |

**TABLE OF CONTENTS**

SUMMARY OF FACTS AND CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I. The rule in this case was not subject to the notice-and-comment requirement of the Administrative Procedure Act, and the Department's mere statement of a position on the status of certifications as orders particularly was not.

    A. No Authority to Make Legislative Rules . . . . . . . . . . . . . . . . . . . . . . . . . . .

    B. A Question of Procedure or Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. This court has no jurisdiction to hear a challenge to the substance of the Final Rule

III. The case is not "ripe" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. Plaintiffs do not have standing, and Arizona is an indispensable party . . . . . . . . . . .

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# TABLE OF AUTHORITIES

**CASES**

Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) . . . 8

Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450,
    81 L.Ed.2d 270 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Calderon v. Ashmus, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) . . . . . . . . . 1

Chrysler Corp. v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) . . . . . . . . 5

Colwell v. Department of Health and Human Services, 558 F.3d 1112
    (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Erringer v. Thompson, 371 F.3d 625 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Gonzales v. Oregon, 546 U.S. 243, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) . . . . . . . . . . 5

Gunderson v. Hood, 268 F.3d 1149 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Habeas Corpus Resource Center v. Department of Justice, 2009 U.S. Dist. LEXIS 7562
    (N.D. Cal.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Hemp Industries Association v. Drug Enforcement Administration, 333 F.3d 1082
    (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

James V. Hurson Assoc. v. Glickman, 229 F.3d 277 (D.C. Cir. 2000) . . . . . . . . . . . . . . . 7

Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177,
    111 L.Ed.2d 695 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888,
    112 L.Ed.2d 1005 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Miguel-Miguel v. Gonzales, 500 F.3d 941 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 13

Minority Television Project, Inc. v. FCC, 736 F.3d 1192 (9th Cir. 2013) . . . . . . . . . . . . 8

Mora-Meraz v. Thomas, 601 F.3d 933 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

National Labor Relations Bd. v. Bell Aerospace Co., 416 U.S. 267, 94 S.Ct. 1757,
    40 L.Ed.2d 134 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

National Park Hospitality Assn. v. Department of Interior, 538 U.S. 803,
    123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12

Natural Resources Defense Council v. Abraham, 388 F.3d 701 (2004) . . . . . . . . . . . . . 14

Pearson v. Shalala, 164 F.3d 650 (D.C. Cir 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 120 S.Ct. 1084,
    146 L.Ed.2d 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 114 S.Ct. 771,
	127 L.Ed.2d 29 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

United States v. Dunifer, 219 F.3d 1004 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) . . . . . . . . . . . 9

**FEDERAL STATUTES**

5 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7

18 U.S.C. § 3599 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 11, 13

**FEDERAL REGULATIONS AND REGULATION NOTICES**

28 C.F.R. § 26.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 C.F.R. § 26.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Certification Process for State Capital Counsel Systems,
	73 Fed. Reg. 75327 (Dec. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Certification Process of State Capital Counsel Systems; Removal of Final Rule,
	75 Fed. Reg. 71353 (Nov. 23, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Certification Process for State Capital Counsel System,
	78 Fed. Reg. 58160 (Sept. 23, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

**OTHER AUTHORITIES**

Congressional Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1 Charles H. Koch, Administrative Law and Practice (3d ed. 2010) . . . . . . . . . . . . . 4, 5, 13

Richard J. Pierce, Administrative Law Treatise (5th ed. 2010) . . . . . . . . . . . . . . . 5, 6, 8, 13

Streamlined Procedures Act of 2005, Hearing before the Subcommittee on Crime,
	Terrorism, and Homeland Security of the Committee on Judiciary, House of
	Representatives, 109th Cong., 1st Sess., Serial No. 109-82 (2005) . . . . . . . . . . 9, 11

U.S. Dep't of Justice, Off. of Legal Counsel, The Attorney General's Authority in
	Certifying Whether a State Has Satisfied the Requirements for Appointment of
	Competent Counsel for Purposes of Capital Conviction Review Proceedings
	(Dec. 16, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## SUMMARY OF FACTS AND CASE

In 1996, Congress passed a landmark reform of habeas corpus law for the specific purpose of reducing the extreme delay in the execution of capital judgments, as reflected in the title of the act: the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This act added Chapter 154 to Title 28 of the United States Code, providing expedited processing of capital cases in federal habeas corpus if states had or adopted mechanisms to provide qualified and adequately funded representation in state postconviction proceedings. *See Calderon v. Ashmus*, 523 U.S. 740, 742-743 (1998).

In 2006, Congress amended AEDPA to provide that the determination of whether a state had established a qualifying mechanism would be made initially by the Attorney General of the United States with *de novo* review by the Court of Appeals for the D.C. Circuit. *See* 28 U.S.C. § 2265(a)(1) & (c).[1]  Congress further directed the Attorney General to "promulgate regulations to implement the certification *procedure* under subsection (a)." § 2265(b) (emphasis added).

Despite the purpose of the act to reduce delay, the Attorney General did not promulgate a final rule until two and a half years after enactment. *See* Certification Process for State Capital Counsel Systems, 73 Fed. Reg. 75327 (Dec. 11, 2008). Plaintiff Habeas Corpus Resource Center challenged the rule on notice grounds in the same court as the present action, and the District Court preliminarily enjoined enforcement. *See Habeas Corpus Resource Center v. Department of Justice*, 2009 U.S. Dist. LEXIS 7562 (N.D. Cal.).

Rather than appealing this ruling, the Department of Justice withdrew the rule. *See* Certification Process of State Capital Counsel Systems; Removal of Final Rule, 75 Fed. Reg. 71353 (Nov. 23, 2010). Despite the purpose of the act to reduce delay, the Department still had not promulgated a new final rule as of April 18, 2013. On that date,

---

1. Unless otherwise specified, all further section references are to Title 28 of the United States Code.

Brief for Amici Curiae Opposing Summary Judgment

-1-

the Attorney General of Arizona applied for certification notwithstanding the absence of a final rule.  A copy of that application was attached to the complaint in this action as Exhibit 6.  The Department responded in a letter, Exhibit 8 of the complaint, stating in essence that it would not proceed beyond preliminary information gathering until the final rule had been promulgated.

The Department promulgated a new final rule on September 23, 2013, over seven years after the 2006 amendments.  *See* Complaint Exhibit 1 (the "Final Rule").  The new rule granted the capital inmates major concessions of dubious legality, including a five-year expiration on certifications, *see* 28 C.F.R. § 26.23(e), and presumptive requirements for qualification of counsel beyond those Congress has enacted for postconviction counsel for federal capital cases.  *Compare* 28 C.F.R. § 26.22(b)(1)(i), *with* 18 U.S.C. § 3599(c).

Unsatisfied with these concessions, plaintiffs Habeas Corpus Resource Center and the Federal Public Defender for the District of Arizona filed the complaint in the present action.  This court issued a temporary restraining order on October 18, 2013, and a preliminary injunction on December 4, 2013.  Plaintiffs have now moved for summary judgment, asking the court to "[h]old unlawful and set aside" the Final Rule or to enjoin its effective date.  *See* Motion for Summary Judgment 23 ("MSJ"); Complaint 20.

**SUMMARY OF ARGUMENT**

The Administrative Procedure Act has a broad definition of "rule" but also a broad set of exceptions to the notice-and-comment requirement.  Only rules with the force of law, known as "legislative" or "substantive" rules, are subject to this requirement. "Interpretive" rules and procedural rules are exempt.  The rule in the present case is a combination of interpretive and procedural.  It does not purport to be legislative, and it cannot be because Congress has not delegated any quasi-legislative authority.  The notice-and-comment requirement does not apply and therefore cannot form the basis of injunction or a declaration of invalidity.

      This court had no jurisdiction to hear this pre-enforcement challenge.  When a statute provides a specific mode of review for agency decisions but is silent about pre-enforcement challenges, jurisdiction to entertain such challenges depends on the structure, objectives, and legislative history of the statute as well as its language.  For the act at issue in this case, hearing this challenge in this court would amount to an evasion of the review scheme established by Congress.

      This case is not ripe.  Regulations are not ordinarily ripe for review until they have been applied to particular circumstances.  No exception applies in this case.  The regulation does not command or forbid the plaintiffs or anyone else to do anything.  It only establishes the procedure for certifications and some rebuttable presumptions that the Department of Justice intends to employ in making its decisions.  Any objections to the substance or procedure can be heard in a judicial forum designated by Congress before any concrete effect is felt.  Mere uncertainty as to the application of the law has been specifically rejected by the Supreme Court as a cognizable hardship for the purpose of ripeness analysis.  The Plaintiffs' wildly speculative claim that the Attorney General would actually grant certification on a bare bones application with no affirmative showing makes this a textbook case of unripeness.

      The Plaintiffs do not have standing.  In addition to the reasons stated by the Defendants, capital defense lawyers are not within the "zone of interests" protected by the Antiterrorism and Effective Death Penalty Act of 1996.  Having sought relief only on their own behalf, and not as representatives of their clients, the plaintiffs do not have standing.

      The State of Arizona has a pending application for certification with the United States Department of Justice.  The injunction granted in this case effectively halts that pending proceeding.  The State therefore has an interest which may be impaired as a practical matter, and under Rule 19 of the Federal Rules of Civil Procedure any relief granted must be shaped so as not to impair the interests of the absent party.  Any relief granted would violate Rule 19 to the extent it prevents or delays Arizona's application.

Brief for Amici Curiae Opposing Summary Judgment

**ARGUMENT**

**I. The rule in this case was not subject to the notice-and-comment requirement of the Administrative Procedure Act, and the Department's mere statement of a position on the status of certifications as orders particularly was not.**

*A. No Authority to Make Legislative Rules*.

Plaintiffs assert matter-of-factly that the Final Rule is subject to the notice-and-comment requirements of the Administrative Procedure Act (APA). *See* MSJ 7. This issue is not so simple. The entire rule is not and cannot be a "legislative" or "substantive" rule subject to the notice-and-comment requirement. The procedure section is expressly exempt from that requirement under the APA. Finally, an agency's mere statement of a position is not a rule at all.

The APA has a general requirement of notice and comment for the promulgation of rules, 5 U.S.C. § 553(b), with a broad definition of "rule," *id*. § 551(4), but also a sweeping list of exceptions to the requirement.

> "Except when notice or hearing is required by statute, this subsection does not apply—(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice . . . ."

*Id*. § 553(b). What is left of the set of "rules," after all those subsets are subtracted, is the category called "substantive rules," *see Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1124 (9th Cir. 2009), or "legislative rules." *See Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001); *see also Mora-Meraz v. Thomas*, 601 F.3d 933, 939-940 (9th Cir. 2010); 1 Charles H. Koch, Administrative Law and Practice § 4.10, at 264-265, n.19 (3d ed. 2010) (preferring term "legislative" over "substantive").

Telling the difference between "legislative rules" and "interpretive rules" can be difficult, *see*, *e.g.*, *Gunderson v. Hood*, 268 F.3d at 1154, but there is one clear and rudimentary prerequisite for a legislative rule. A legislative rule has the force and effect of law, not merely persuasive effect as an interpretation of the statute, and an agency cannot promulgate such a rule unless it has been delegated quasi-legislative authority by Congress.

Brief for Amici Curiae Opposing Summary Judgment

-4-

1  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979); *see also Gonzales v. Oregon*,
2  546 U.S. 243, 255-256 (2006); *National Park Hospitality Assn. v. Department of Interior*,
3  538 U.S. 803, 808 (2003); 1 Richard J. Pierce, Administrative Law Treatise § 6.2, at 408
4  (5th ed. 2010); 3 Koch, Administrative Law and Practice § 10:21, at 427-248.

In the 2006 amendments to the Antiterrorism and Effective Death Penalty Act of 1996, Congress has not merely omitted any authority to promulgate substantive rules having the force of law, it has expressly forbidden any additions to the statutory requirements. Congress gave the Attorney General authority to "promulgate regulations to implement the certification *procedure* under subsection (a)." 28 U.S.C. § 2265(b) (emphasis added). If Congress intended to give the Attorney General the power to make substantive rules with the force of law, it would not have limited the grant of regulatory authority to procedure. Quite the contrary, Congress expressly forbade the creation of any additional criteria for certification beyond those specified in the statute itself, either by the executive branch or the judiciary. *See* 28 U.S.C. § 2265(a)(3). The Attorney General has no authority to "impose new rights or obligations," which is the hallmark of a legislative rule, *see Mora-Meraz*, 601 F.3d at 940, but only to give his opinion regarding the meaning of the substantive rules Congress has established in the statute, the hallmark of an interpretive rule. *See ibid*.

With or without authority to issue legislative rules, an agency can "issue interpretive rules . . . to advise the public of the agency's construction of the rules it administers." *Gunderson*, 268 F.3d at 1154; *see also National Park Hospitality*, 538 U.S. at 808-809. Although the Department did not explicitly state whether it intended to promulgate a legislative rule or an interpretive one, it is clear from the authority cited that the rule is merely interpretive. In response to comments challenging whether the Department had any authority to articulate substantive standards, the preamble to the final rule cited an Office of Legal Counsel opinion. *See* Certification Process for State Capital Counsel System, 78 Fed. Reg. 58160, 58161, col.3 (Sept. 23, 2013); U.S. Dep't of Justice,

Off. of Legal Counsel, The Attorney General's Authority in Certifying Whether a State Has Satisfied the Requirements for Appointment of Competent Counsel for Purposes of Capital Conviction Review Proceedings (Dec. 16, 2009).[2] This memo addressed to the Attorney General states,

> "pursuant to section 2265(b), you may promulgate regulations that set forth the federal minimum competency standards that you will apply in making certification determinations, although you are not required to take this action."

That describes an interpretive rule. Nowhere in the OLC opinion or the final rule does the Department purport to make any rule with the force of law, binding on courts or the general public. *See Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) ("force of law" as defining characteristic of legislative rule versus interpretive rule); 1 Pierce, Administrative Law Treatise § 6.4, at 432-433.

An agency can promulgate an interpretive rule through the notice-and-comment procedure, even though it is not required to do so. The fact that an agency used the notice-and-comment procedure does not mean the rule is legislative. *See Hemp Industries Association v. Drug Enforcement Administration*, 333 F.3d 1082, 1087, n.5 (9th Cir. 2003). The rule in this case is a combination of procedural and interpretive. It cannot be legislative, because the attorney general does not have and has not asserted authority to make such a rule. Therefore, the notice-and-comment requirement of 5 U.S.C. § 553(b) is inapplicable to this rule and cannot provide a basis declaring the Final Rule invalid or enjoining its implementation.

B.  A Question of Procedure or Policy.

In addition to the lack of delegated quasi-legislative authority, the portion of the rule at issue in Plaintiffs' notice-and-comment argument, MSJ 7-8, is clearly procedural and therefore exempt from the notice-and-comment requirement under the express terms of

---

2.   http://www.justice.gov/olc/opiniondocs/capital-counsel-memo.pdf.

1  § 553(b). The position statement regarding whether a certification decision is adjudication
2  or rulemaking relates to § 26.23, subdivisions (a)-(c). *See* 78 Fed. Reg. at 58174, col. 2.
3  These subsections deal only with the procedure for certification and not substantive criteria
4  for certification. Thus, even if the Department had changed the text of these subsections in
5  a manner outside the scope of the notice, it would not violate the APA.

6  Yet the change challenged in this argument is even less than that. It is not a rule at
7  all, but merely a position of the agency on a question of law that may arise in the course of
8  a decision by the agency or a review of the decision by the Court of Appeals. Specifically,
9  when the Department considers a certification application, does the APA require it to
10 follow the procedure for an APA rulemaking as opposed to an order? The question of law
11 is an interpretation of the Administrative Procedure Act, a statute the Attorney General
12 does not administer, not an interpretation of AEDPA. In similar circumstances, the
13 Supreme Court found that an announcement of a position by an administrative agency
14 regarding the applicability of a statute it does not administer was neither a legislative rule
15 nor an interpretive rule, but rather a "general statemen[t] of policy." *See National Park*
16 *Hospitality*, 538 U.S. at 809. Such statements are also exempt from the notice-and-
17 comment requirement under 5 U.S.C. § 553(b).

18 In Part III C, Plaintiffs find fault with the Department's response to public
19 comments. *See* MSJ 8-10. All these comments relate to the procedural portions of the
20 Final Rule. Notice and comment are not required for procedural rules. The Administrative
21 Procedure Act expressly exempts them. *See, e.g., James V. Hurson Assoc. v. Glickman*,
22 229 F.3d 277, 280 (D.C. Cir. 2000).

23 Plaintiffs' notice-and-comment claims have no merit.

## II. This court has no jurisdiction to hear a challenge to the substance of the Final Rule.

27 Where Congress has vested exclusive jurisdiction to review agency actions in one
28 court, an attack on implementing regulations in another court may be an evasion of that

exclusive jurisdiction. *See United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000); *see also Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1211 (9th Cir. 2013) (en banc) (citing *Dunifer*). Such evasion must not be allowed, *Dunifer*, at 1007, but that is exactly what the plaintiffs seek to do in the present case.

Statutes which provide an exclusive mechanism for judicial review of agency orders or adjudications but which do not specifically address pre-enforcement challenges to the implementing regulations are fairly common, and there is a substantial body of case law on the question of whether such challenges may be brought under more general sources of jurisdiction, including the Administrative Procedure Act. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139-140 (1967) framed the question as "whether Congress by the [act in question] intended to forbid pre-enforcement review of this sort of regulation promulgated by the" responsible agency. *Abbott Laboratories* is the case generally regarded as having opened up regulations to pre-enforcement review. *See* 2 Pierce, Administrative Law Treatise § 15.14, at 1359-1360. In that case, the Supreme Court "conclude[d] that nothing in the Food, Drug, and Cosmetic Act itself precludes this action," 387 U. S. at 148, but the question must be asked anew for each statute.

In *Block v. Community Nutrition Institute*, 467 U.S. 340, 345 (1984), the Supreme Court held that

> "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), the high court applied *Block* to the question of "delayed judicial review," whether an allegedly aggrieved party must wait for the judicial review that follows an administrative determination or whether he can file suit immediately. The District Court in that case enjoined the enforcement of a regulation that had been adopted to implement the Federal Mine Safety and Health

Amendments Act of 1977 ("Mine Act"). *See id*. at 202-203, 205-206.  This act, like the act in the present case, provided for administrative determination and judicial review in the Court of Appeals of particular cases but was "facially silent with respect to pre-enforcement claims." *Id*. at 208.

The Tenth Circuit held that allowing this review " 'would permit preemptive strikes that could seriously hamper effective enforcement of the Act, disrupting the review scheme Congress intended.' " *Id*. at 206 (quoting *Thunder Basin Coal Co. v. Reich*, 969 F.2d 970, 975 (1992)).  The Supreme Court affirmed.  The court noted the legislative history of the Mine Act, with particular emphasis on Congress's concern that the process was too cumbersome and its intent to strengthen and streamline its enforcement. *Id*. at 209-211, 216.  The Supreme Court noted that this difference in legislative purpose distinguished the Mine Act from the statute at issue in *Abbott Laboratories*. *Id*. at 212. For the statute in the present case, it is beyond dispute that curbing delays is *the* central purpose of the habeas reforms of the Antiterrorism and Effective Death Penalty Act of 1996, *see*, *e.g.*, 142 Cong. Rec. 7562, col. 3 (1996) (statement of Sen. Feinstein); *Williams v. Taylor*, 529 U.S. 362, 404 (2000), and that congressional frustration with the failure to implement Chapter 154 was the motivation behind the 2006 amendments. *See* Streamlined Procedures Act of 2005, Hearing before the Subcommittee on Crime, Terrorism, and Homeland Security of the Committee on Judiciary, House of Representatives, 109th Cong., 1st Sess., Serial No. 109-82, pp. 82-83 (2005) (statement of Mr. Lungren) (cited below as "Streamlined Procedures Act Hearing").[3]

---

3. As often happens in Congress, language considered in committee hearings for a bill that did not pass was amended into another bill at the last minute. H.R. 3035 § 9 contained amendments to sections 2261 and 2265 establishing a certification procedure largely the same as that adopted in Pub. L. 109-177, § 507, 120 Stat. 250, and the hearing on it may be considered legislative history of the language adopted to the extent it is the same.

The *Thunder Basin* Court distinguished cases in which the claims asserted outside the statutory review procedure were "wholly collateral" to those review provisions. 510 U.S. at 212-213. Claims are not collateral when they "require interpretation of the party's rights and duties under" the statute to be enforced in the administrative proceeding. *Id*. at 214. The heart of the present case is the criteria by which it will be decided whether a State can be certified under Chapter 154. Those are precisely the questions that Congress assigned to the Attorney General to decide with judicial review in the exclusive jurisdiction of the Court of Appeals for the D.C. Circuit.

*Thunder Basin* also distinguished *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) as a case where precluding the suit in district court would, as a practical matter, leave the plaintiffs without any meaningful judicial review. *See* 510 U.S. at 213, 215. In the present case, as in *Thunder Basin*, the plaintiffs, or at least the prisoners they represent, can obtain review of their claims in the judicial forum Congress has designated.[4]

If there were any doubt that the same principles apply in a purely facial attack on a regulation, it was eliminated in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). The question in that case was whether persons "needing advance knowledge for planning purposes" can attack a regulation "on general legal grounds" under 28 U.S.C. § 1331 rather than going through the procedure designated by Congress for making claims. *Shalala*, 529 U.S. at 10. The answer was no. *See id*. at 19 (distinguishing *McNary* and citing *Thunder Basin*).

In the present case, there is an additional, powerful reason in the structure of the statute for finding that it precludes the pre-enforcement challenge at issue here. Unlike the cases noted above, the authority to review administrative determinations under the statute

---

4. Amici do not believe that the plaintiffs would have standing on their own in the administrative proceeding or its judicial review for the same reasons they do not have standing in this case, but that makes no difference as a practical matter because they can and doubtless will make the same arguments on the merits of certification on behalf of their clients.

is not vested in courts of appeals generally but rather in one specific court of appeals. Congress was surely aware that questions of interpretation would inevitably arise regarding this statute, as they do for nearly all statutes. If all the cases are channeled to one court, there will be no divisions of authority. On the other hand, if the present suit is allowed and the plaintiffs prevail, the Department of Justice must promulgate a new rule, and that new rule must again pass muster with this court if the Plaintiffs challenge it a third time. But what happens when a certification decision pursuant to that rule comes before the court designated by Congress, the Court of Appeals for the D.C. Circuit? The rule would not be the product of a normal administrative proceeding, but rather it would be shaped by the demands of another court, one of the courts Congress specifically wanted to remove these decisions from. *See* Streamlined Procedures Act Hearing, *supra*, at 82-83. Would such a rule be entitled to any deference whatsoever? Particularly in light of the congressional command for *de novo* review, *see* 28 U.S.C. § 2265(c)(3), a prior court interpretation in this case and a regulation resulting from it must either be a nullity and a waste of time and resources or else an interference with the congressional design.

In light of "the legislative history's clear concern with channeling and streamlining the [qualification] process," *Thunder Basin*, 510 U.S. at 216, section 2265 should be understood to preclude the suit in this case.

### III. The case is not "ripe."

"Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm. Some statutes permit broad regulations to serve as the 'agency action,' and thus to be the object of judicial review directly, even before the concrete effects normally required for APA review are felt. Absent such a provision, however, *regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA* until the scope of the controversy has been reduced to more manageable proportions, and its factual

components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately. Such agency action is 'ripe' for review at once, whether or not explicit statutory review apart from the APA is provided.)" *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) (emphasis added).

As *Lujan* indicates, allowing an attack on a regulation prior to any enforcement is the exception, not the rule. The "major exception" for "substantive rule[s]," requiring an immediate change in behavior does not apply here. For the reasons described in Part I, *supra*, the regulation in this case is not and cannot be a "substantive rule" or "legislative rule." Where this exception applies, requiring a regulated party to wait for specific application may create a hardship, but the hardship must be " 'adverse effects of a strictly legal kind.' " *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 809 (2003) (quoting *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). If a regulation

" 'do[es] not command anyone to do anything or to refrain from doing anything; [it] does not grant, withhold, or modify any formal legal license, power, or authority; [it] does not subject anyone to any civil or criminal liability; [and it] create[s] no legal rights or obligations,' "

then it does not create the kind of hardship that warrants an exception to the general rule. *Ibid*. (alterations by the Court). The Supreme Court specifically rejected an argument that "mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis." *Id*. at 811. Mere uncertainty over whether a legal rule will apply to a particular circumstance is no more a hardship, and it presents even greater reasons to wait for the particular application.

The implication that a statute with generally worded criteria must be crystallized in the implementing regulation before it can be enforced, *see* MSJ 19, is a remarkable one. It

is a well-established principle of administrative law that an agency charged with enforcement of such a statute has broad discretion to choose between regulations and adjudications to fill in the details. *See National Labor Relations Bd. v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974); *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007); 1 Pierce, Administrative Law Treatise § 6.9, at 503-504; 1 Koch, Administrative Law and Practice § 2.12[3], at 81-86. In the present case, the uncertainty over whether particular states qualify for certification is the claimed injury. *See* Complaint 16-17. Obviously, the best way to resolve that uncertainty is to proceed with the certification process. Indeed, it is the only way to resolve it finally. Given the general wording of the criteria in the statute, § 2265(a)(1), and Congress's prohibition against adding additional restrictions, § 2265(a)(3), it is not possible under this statute to establish by rulemaking a set of criteria specific enough that certification decisions can be mathematically predicted in advance.

      For their thesis that an agency must provide "definitional content" in its regulation rather than through a process of adjudicating specific applications, the Plaintiffs rely primarily on *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir 1999). *See* MSJ 19. That case actually says exactly the opposite. "That is *not* to say that the agency was necessarily required to define the term in its initial general regulation—or indeed that it is obliged to issue a comprehensive definition all at once." *Id*. at 661 (emphasis added). Unlike the present case, *Pearson* was not a pre-enforcement attack seeking to enjoin enforcement or regulation, but rather it was a review of an agency decision in a particular case. *See id*. at 653-654. Indeed, the *Pearson* court noted that the Second Circuit had held that a pre-enforcement challenge to the general regulation in the absence of a specific application was unripe. *See id*. at 654, n.4. The relief ordered in *Pearson* was not to enjoin enforcement of the general regulation but rather to remand the specific application to the agency to explain *in its decision* its interpretation of the disputed term. *See id*. at 661. The court did not require an amendment to the regulation or enjoin its enforcement.

The speculative claims made by the Plaintiffs in this case make it a textbook case of unripeness. The Plaintiffs' argument, accepted by this court at the preliminary injunction stage, *see* Order Granting Preliminary Injunction 17, finds a shift in the burden of proof from the States to the parties opposing certification based on nothing more than a speculative extrapolation from the minimalist requirement in the regulation that the States make an application in writing. *See* MSJ 16-19. That would amount to a shifting of the burden only if the Attorney General actually accepted a bare-bones application as a prima facie case and granted certification without an affirmative showing to the contrary. Nothing in the regulation says or indicates that the Attorney General is actually going to do that. The Ninth Circuit rejected a very similar speculative claim as unripe in *Natural Resources Defense Council v. Abraham*, 388 F.3d 701, 706 (2004). The fact that a regulation does not nail down every conceivable misapplication by the agency does not make the regulation invalid or the statute it implements subject to a judicial roadblock. The administrative machinery of government would grind to a halt if that were the law.

The issues in this case are not ripe for judicial decision. They should wait for a decision on an actual application and be reviewed in the manner and forum designated by Congress.

**IV. Plaintiffs do not have standing, and Arizona is an indispensable party.**

At the preliminary injunction stage, amicus Marc Klaas explained that the Plaintiffs lack standing in this case because they are not within the "zone of interests" protected by the statute. *See* Brief for Marc Klaas as Intervenor or Amicus Opposing Plaintiffs' Motion for a Preliminary Injunction 8-9; Reply to Plaintiffs' Response to the Amicus Brief Opposing Plaintiffs' Motion for a Preliminary Injunction 6-7. In those briefs, amicus also explained that any relief that has the practical effect of halting Arizona's pending application for certification cannot be granted without joining Arizona as a party, which cannot be done without the State's consent because of sovereign immunity. *See* Brief for

Marc Klaas as Intervenor or Amicus Opposing Plaintiffs' Motion for a Preliminary Injunction 2-5; Reply to Plaintiffs' Response to the Amicus Brief Opposing Plaintiffs' Motion for a Preliminary Injunction 2-5.  Rather than repeat those arguments here, amici incorporate them by reference and ask the court to reconsider them.

## CONCLUSION

The Plaintiffs' motion for summary judgment should be denied.

Dated:  May 5, 2014                                  Respectfully submitted,


                                                     By:   /s/  Kent S. Scheidegger
                                                            KENT S. SCHEIDEGGER
                                                     Attorney for Amici Curiae Marc Klaas
                                                            and Edward G. Hardesty