**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HABEAS CORPUS RESOURCE CENTER and
THE OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE DISTRICT OF
ARIZONA,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE and ERIC H. HOLDER, in
his official capacity as United
States Attorney General,

        Defendants.

_____/

No. C 13-4517 CW

ORDER GRANTING IN
PART PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT AND
GRANTING IN PART
DEFENDANTS' CROSS-
MOTION FOR SUMMARY
JUDGMENT

Plaintiffs Habeas Corpus Resource Center (HCRC)[1] and the
Office of the Federal Public Defender for the District of Arizona
(FDO-Arizona)[2] have filed a motion for summary judgment.
Defendants United States Department of Justice (DOJ) and United
States Attorney General Eric H. Holder oppose the motion and have
filed a cross-motion for summary judgment.[3]  The motions were
heard on July 31, 2014.  Having considered oral argument and the

_____

[1] HCRC is an entity in the Judicial Branch of the State of
California that, among other things, provides legal representation
to men and women under sentence of death in state and federal
habeas corpus proceedings.  Complaint ¶ 16.

[2] FDO-AZ is a Federal Defender organization that operates
under the authority of the Criminal Justice Act of 1964, 18 U.S.C.
§ 3006A(g).  Among other things, FDO-AZ provides legal
representation to indigent men and women sentenced to death.
Complaint ¶ 17.

[3] Marc Klaas has filed an unopposed motion to file a brief as
amicus curiae.  The Court grants the motion.  Docket No. 69.

papers submitted by the parties, the Court GRANTS Plaintiffs'
motion in part (Docket No. 67) and GRANTS Defendants' cross-motion
in part (Docket No. 71).

BACKGROUND

I.   The 2013 Final Rule

The Antiterrorism and Effective Death Penalty Act (AEDPA) of
1996 added chapter 154 of Title 28 of the United States Code.
Chapter 154 provides expedited procedures in federal capital
habeas corpus cases when a state is able to establish that it has
provided qualified, competent, adequately resourced and adequately
compensated counsel to death-sentenced prisoners.  Under the
AEDPA, federal courts were responsible for determining whether
states were eligible for the expedited federal procedures.  The
USA Patriot Improvement and Reauthorization Act of 2005, Pub. L.
No. 109-174, 120 Stat. 192 (2005), amended chapter 154 to shift
the eligibility determination from the federal courts to the
Attorney General.

In December 2008, the Attorney General published a final rule
to implement the procedure prescribed by chapter 154.  On January
20, 2009, the Court granted a preliminary injunction, enjoining
Defendants from putting the regulation into effect without first
providing an additional comment period of at least thirty days and
publishing a response to any comments received during such a
period.  Habeas Corpus Resource Ctr. v. United States Department
of Justice, 2009 WL 185423, *10 (N.D. Cal.).  On February 5, 2009,
Defendants solicited further public comment on its proposed
certification process.  Defendants thereafter proposed to retract
the 2008 regulation pending the completion of a new rulemaking

process.  See 75 Fed. Reg. 29,217 (May 25, 2010).  On November 23, 2010, Defendants published a final rule retracting the 2008 regulations.  See 75 Fed. Reg. 71,353 (Nov. 23, 2010).

On March 3, 2011, the DOJ published a notice of proposed rulemaking for a new certification process.  76 Fed. Reg. 11,705. The comment period closed on June 1, 2011.  On February 13, 2012, the DOJ then published a supplemental notice soliciting public comments on five contemplated changes.  77 Fed. Reg. 7559.  The comment period closed on March 14, 2012.  On September 23, 2013, the Final Rule was published.

Section 26.22 of the Final Rule prescribes the standards a state must meet in order to earn certification under 28 U.S.C. §§ 2261 and 2265.  The Final Rule provides:

> § 26.22 Requirements.
>
> The Attorney General will certify that a State meets the requirements for certification under 28 U.S.C. 2261 and 2265 if the Attorney General determines that the State has established a mechanism for the appointment of counsel for indigent prisoners under sentence of death in State postconviction proceedings that satisfies the following standards:
> . . .
>  (b) The mechanism must provide for appointment of competent counsel as defined in State standards of competency for such appointments.
>
> (1) A State's standards of competency are presumptively adequate if they meet or exceed either of the following criteria:
>
> (i) Appointment of counsel who have been admitted to the bar for at least five years and have at least three years of postconviction litigation experience.  But a court, for good cause, may appoint other counsel whose background, knowledge, or experience would otherwise enable them to properly represent the petitioner, with due

United States District Court
For the Northern District of California

3

consideration of the seriousness of the penalty and the unique and complex nature of the litigation; or

(ii) Appointment of counsel meeting qualification standards established in conformity with 42 U.S.C. 14163(e)(1) and (2)(A), if the requirements of 42 U.S.C. 14163(e)(2)(B), (D), and (E) are also satisfied.

(2) Competency standards not satisfying the benchmark criteria in paragraph (b)(1) of this section will be deemed adequate only if they otherwise reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases.

78 Fed. Reg. at 58,183.  The "standards established in conformity with 42 U.S.C § 14163(e)(1) and (2)(A)" referred to in section 26.22(b)(1)(ii) are provisions of the Innocence Protection Act (IPA).  They call for maintenance of a roster of qualified attorneys, specialized training programs for attorneys providing capital case representation, monitoring of the performance of attorneys who are appointed and their attendance at training programs, and removal from the roster of attorneys who fail to deliver effective representation, engage in unethical conduct, or do not participate in required training.  42 U.S.C. §§ 14163(e)(2)(B),(D), and (E).

Section 26.23 of the Final Rule provides the process for a state's certification:

(a) An appropriate State official may request in writing that the Attorney General determine whether the State meets the requirements for certification under § 26.22 of this subpart.

(b) Upon receipt of a State's request for certification, the Attorney General will make the request publicly available on the Internet (including any supporting materials included in the request) and publish a notice in the Federal Register—

United States District Court
For the Northern District of California

(1) Indicating that the State has requested certification;

(2) Identifying the Internet address at which the public may view the State's request for certification; and

(3) Soliciting public comment on the request.

(c) The State's request will be reviewed by the Attorney General.  The review will include consideration of timely public comments received in response to the Federal Register notice under paragraph (b) of this section, or any subsequent notice the Attorney General may publish providing a further opportunity for comment. The certification will be published in the Federal Register if certification is granted.  The certification will include a determination of the date the capital counsel mechanism qualifying the State for certification was established.

(d) A certification by the Attorney General reflects the Attorney General's determination that the State capital counsel mechanism reviewed under paragraph (c) of this section satisfies chapter 154's requirements.  A State may request a new certification by the Attorney General to ensure the continued applicability of chapter 154 to cases in which State postconviction proceedings occur after a change or alleged change in the State's certified capital counsel mechanism.  Changes in a State's capital counsel mechanism do not affect the applicability of chapter 154 in any case in which a mechanism certified by the Attorney General existed throughout State postconviction proceedings in the case.

(e) A certification remains effective for a period of five years after the completion of the certification process by the Attorney General and any related judicial review.  If a State requests re-certification at or before the end of that five-year period, the certification remains effective for an additional period extending until the completion of the re-certification process by the Attorney General and any related judicial review.

78 Fed. Reg. at 58,184.

5

II.  The Impact of the 2013 Final Rule

     Once a state is certified, the statute of limitations for federal habeas corpus proceedings is "fast-tracked."  First, the statute of limitations for filing a habeas petition in federal court is shortened from one year to 180 days.  28 U.S.C. § 2263(a).  Second, tolling of the statute of limitations is altered to exclude from tolling (1) the period of time between the finality of direct review in state court to the filing of a petition for writ of certiorari in the United States Supreme Court and (2) the filing of exhaustion or successive state habeas petitions.  28 U.S.C. § 2263(b).  Third, a petitioner's ability to amend a petition is limited.  28 U.S.C. § 2266(b)(3)(B).  Fourth, a federal district court must enter final judgment on a habeas petition within 450 days of the filing of the petition, or sixty days after it is submitted for decision--whichever is earlier.  28 U.S.C. § 2266(b).  Finally, the certification is retroactive, reaching back to the date the qualifying mechanism is found to have been established.  28 U.S.C. § 2265(a)(2) ("The date the mechanism described in paragraph 1(A) was established shall be the effective date of the certification under this subsection.").

III. Procedural History

     Plaintiffs filed their complaint in this case on September 30, 2013.  On October 18, 2013, the Court granted Plaintiffs' motion for a temporary restraining order and, on December 4, 2013, the Court granted Plaintiffs a preliminary injunction.  On March 6, 2014, the Court granted the parties' stipulation that Plaintiffs could voluntarily dismiss their fifth cause of action without prejudice.  The remaining four causes of action are

(1)  violation of the Administrative Procedure Act (APA) for failure to provide adequate notice; (2) violation of the APA for failure to respond to significant public comment; (3) violation of the APA by a procedurally deficient certification process; and (4) violation of the APA by a substantively deficient certification process.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

DISCUSSION

I.    Procedural Barriers to Plaintiffs' Claims

      A. Standing

      Defendants first argue that Plaintiffs lack standing to challenge the Final Rule because they cannot satisfy Article III's "case or controversy requirement." A plaintiff "has the burden of establishing the three elements of Article III standing: (1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008). "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical." Cole v. Oroville Union High School Dist., 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotation marks omitted).

      "A plaintiff may allege a future injury in order to comply with this requirement, but only if he or she 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.'" Scott v. Pasadena Unified School Dist., 306 F.3d 646, 656 (9th Cir. 2002) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

**United States District Court**
For the Northern District of California

As Plaintiffs note, when the Court granted their motion for a preliminary injunction, it found that they had standing to pursue this challenge.  To the extent that Defendants raise arguments addressed in the order granting Plaintiffs' motion for preliminary injunction, the Court will not revisit those arguments. Recognizing the Court's earlier finding that Plaintiffs have standing, Defendants argue that "the Court did not expressly consider the impact of the Supreme Court's most recent standing analysis in [Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138 (2013)], which is instructive and undercuts Plaintiffs' claim of a cognizable injury."  Defendants' Cross-Motion at 6.  However, Clapper is distinguishable from the instant case.

In Clapper, the Supreme Court found that "United States persons" who alleged that they engaged in "sensitive international communications with individuals who they believe are likely targets of surveillance" under 50 U.S.C. § 1881a, lacked standing to challenge the constitutionality of that provision.  133 S. Ct. at 1142.  "Section 1881a provides that upon the issuance of an order from the Foreign Intelligence Surveillance Court," the government may authorize surveillance of "'persons reasonably believed to be located outside the United States to acquire foreign intelligence information.'"  Id. at 1144 (quoting 50 U.S.C. § 1881a(a)).  The statute prohibits the government from intentionally targeting surveillance at any person known to be in the United States or any "United States person."  50 U.S.C. § 1881a(b).  The Clapper plaintiffs were "attorneys and human rights, labor, legal, and media organizations" who alleged that "some of the people with whom they exchange foreign intelligence

information are likely targets of surveillance under § 1881a."

133 S. Ct. at 1145.  The Clapper plaintiffs further alleged that

there was "an objectively reasonable likelihood that their

communications [would] be acquired under § 1881a at some point in

the future, thus causing them injury" and that the risk of

surveillance was "so substantial" that they were "forced to take

costly and burdensome measures to protect the confidentiality of

their international communications."  Id. at 1146.

The Supreme Court rejected both theories of standing, finding

that the first failed because the argument rested on Defendants'

> highly speculative fear that: (1) the Government will
> decide to target the communications of non-U.S. persons
> with whom they communicate; (2) in doing so, the
> Government will choose to invoke its authority under
> § 1881a rather than utilizing another method of
> surveillance; (3) the Article III judges who serve on
> the Foreign Intelligence Surveillance Court will
> conclude that the Government's proposed surveillance
> procedures satisfy § 1881a's many safeguards and are
> consistent with the Fourth Amendment; (4) the Government
> will succeed in intercepting the communications of
> respondents' contacts; and (5) respondents will be
> parties to the particular communications that the
> Government intercepts.

Id. at 1148.  The Supreme Court found that this "highly attenuated

chain of possibilities does not satisfy the requirement that

threatened injury must certainly be impending."  Id.  The Court

specifically noted that the government could authorize the same

surveillance the plaintiffs feared based on other authority.  The

Court further noted that § 1881a "at most authorizes--but does not

mandate or direct--the surveillance that respondents fear."  Id.

at 1149 (emphasis in original).

In contrast, there is no method, other than the procedures

set out in the challenged rule, by which a state can seek to have

United States District Court
For the Northern District of California

habeas corpus proceedings "fast-tracked."  Moreover, under the challenged rule, "[t]he Attorney General <u>will</u> certify that a State meets the requirements for certification . . . if the Attorney General determines that the State has established a mechanism for the appointment of counsel" that satisfies the standards set out in the rule.  Administrative Record (AR) 1134.  Arizona has already applied for certification.  Accordingly, the contingencies that precluded a finding of standing in <u>Clapper</u> do not exist in this case.

The fact that the retroactive effect of the Final Rule reaches back to the date at which the state mechanism went into effect means that, upon certification, the deadline for a habeas petitioner's application in the certified state may have come and gone without his knowing it.  The confusion caused by the retroactive effect, particularly when combined with the lack of clear certification standards discussed below, forces Plaintiffs to make urgent decisions regarding their litigation, resources, and strategy.  Defendants argue that this fear is unreasonable in light of the Ninth Circuit's holding in <u>Calderon v. United States District Court</u>, 128 F.3d 1283 (9th Cir. 1997).  The panel in <u>Calderon</u> held that AEDPA's one-year statute of limitation "did not begin to run against any state prisoner prior to the statute's date of enactment."  128 F.3d at 1287.  Although the circumstances here are analogous, Defendants cannot guarantee that the Ninth Circuit would come to the same conclusion if faced with a petitioner whose statute of limitations had expired due to a certification under the challenged rule.

United States District Court
For the Northern District of California

The Court again concludes that Plaintiffs have standing to challenge the substance of the Final Rule.  First, they have alleged harm with sufficient detail to state a "concrete and particularized" injury.  Second, the injury can be traced to the proposed implementation of the Final Rule.  Third, Plaintiffs have alleged injury that can be redressed by a decision blocking implementation of the Final Rule as written.

B.   Other Adequate Remedy

Defendants next argue that Plaintiffs' claims fail because the statute provides for judicial review of certification decisions by the D.C. Circuit.  See 28 U.S.C. § 2265(c). Accordingly, Defendants argue that Plaintiffs have another adequate remedy in court that forecloses them from bringing suit pursuant to the APA.  See 5 U.S.C. § 704 (APA provides for judicial review where there is "final agency action for which there is no other adequate remedy in a court.")

However, as Plaintiffs point out, the review provided for by the statute is a review of individual certification decisions, not review of the regulations themselves.  Accordingly, the review of certification decisions does not provide an adequate remedy in this case.

C.   Ripeness

Defendants' final procedural argument is that Plaintiffs' claims are not ripe for review.  Defendants argue that "the Final Rule establishes only the process by which state requests for certification will be adjudicated in the future."  Cross-Motion at 12.  Accordingly, they argue that any harm "would flow only from the ultimate certification decisions, which have yet to be made,

and which will be subject to judicial review in the D.C. Circuit."
Id.  Defendants cite National Park Hospitality Association v.
Department of Interior, 538 U.S. 803 (2003), in support of the
proposition that a challenge to a regulation is not ordinarily
ripe for APA review until the regulation has been applied to a
claimant's situation by some concrete action.

However, the National Park Hospitality Association Court
held, "Determining whether administrative action is ripe for
judicial review requires us to evaluate (1) the fitness of the
issues for judicial decision and (2) the hardship to the parties
of withholding court consideration."  Id. at 808.  Here, the
questions raised by Plaintiffs are fit for judicial decision.  The
Court is able to determine whether the certification procedure as
described in the Final Rule provides adequate notice and
opportunity for comment and whether that procedure is based on
sufficiently defined criteria.  Moreover, as discussed extensively
in the Court's order granting Plaintiffs' motion for a preliminary
injunction, there is a likelihood of significant and irreparable
harm to Plaintiffs if the Final Rule goes into effect, based in
large part on the retroactive effect of any certification
decision.

II.  Notice

The APA "requires an agency conducting notice-and-comment
rulemaking to publish in its notice of rulemaking 'either the
terms or substance of the proposed rule or a description of the
subjects and issues involved.'"  Long Island Care at Home, Ltd. v.
Coke, 551 U.S. 158, 174 (2001) (quoting 5 U.S.C. § 553(b)(3)).
Because the Attorney General's promulgation of the Final Rule

13

constitutes administrative rulemaking, it must comply with the rulemaking provisions of the APA.  See 5 U.S.C. § 553.  To determine compliance, courts inquire whether "the notice fairly apprise[s] the interested persons of the subjects and issues before the Agency.'"  Louis v. DOL, 419 F.3d 970, 975 (9th Cir. 2005).

Plaintiffs claim that the Attorney General failed to provide adequate notice under the APA because he stated, for the first time in the Final Rule, that the certification decisions are not subject to the rulemaking provisions of the APA.  AR 1125 ("[T]he Attorney General's certifications under chapter 154 are orders rather than rules for purposes of the Administrative Procedure Act (APA).  They are accordingly not subject to the APA's rulemaking provisions, see 5 U.S.C. § 553[.]").  When an agency fails to notify interested parties of its position, its notice of proposed rulemaking has not "provide[d] sufficient factual detail and rationale for the rule to permit interested parties to comment meaningfully."  Honeywell Int'l., Inc. v. EPA, 372 F.3d 441, 445 (D.C. Cir. 2004) (citation omitted).

However, Defendants counter that Plaintiffs were given sufficient notice of the Attorney General's position that certification decisions are orders not subject to the rulemaking

provisions of the APA. [4]  First, Defendants argue that the mechanics of the certification process as set out in the Notice of Proposed Rulemaking and adopted in the Final Rule made clear that the Attorney General did not intend to publish proposed decisions granting or rejecting applications for certification or to accept public comment on those decisions.  The Notice of Proposed Rulemaking sets out the following steps: (1) a state requests a determination of whether it meets the criteria for certification; (2) the Attorney General publishes the request and solicits public comment on the request; (3) the Attorney General will review the request and any timely public comment; and (4) if certification is granted, the Attorney General will publish the certification, including "a determination of the date the capital counsel mechanism qualifying the State for certification was established." 76 Fed. Reg. 11,713 (March 3, 2011).  Defendants argue that these

---

[4] Defendants also renew their argument that the retracted 2008 rule provided sufficient notice under the APA because the current Attorney General adhered to the position of his predecessor.  Defendants' argument is unpersuasive.  The Attorney General published a notice of a new proposed rule that resembled the 2008 rule, but omitted its characterization of certification decisions as adjudications, not rules.  However, as the Court found in its order granting the preliminary injunction, far from alerting the public to the fact that the Attorney General adhered to this position taken by his predecessor, it is more likely that the notice of the new rule led interested parties to presume that the Attorney General intentionally removed this characterization. See, e.g., Keene Corp. v. United States, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation and internal quotation marks omitted).

procedures make clear that the Attorney General did not intend for certification decisions to be subject to the notice and comment requirements of rulemaking.  Accordingly, Defendants argue that the inclusion of the procedures provided sufficient notice because they included the "substance of the proposed rule."  <u>Environmental Def. Ctr., Inc. v. EPA</u>, 344 F.3d 832, 851 (9th Cir. 2003).

Moreover, Defendants argue that any error was harmless, because Plaintiffs were not deprived of an opportunity to comment on the proposed procedure.  Indeed, Plaintiffs submitted comments criticizing the procedure's "failure to require any information upon which the certification determination will be made" and stating that such failure "denies the public notice of and deprives interested persons the opportunity to participate in the certification determination in a meaningful and informed manner and violates due process."  AR 169.  <u>See also</u> AR 570 ("the Attorney General's proposed rule does not create a process that will provide adequate notice of the information to be considered in the certification determination"); AR 572 ("Full justification for granting or denying a request for certification must be made public, as well as all information relied upon by the Attorney General in doing so").  Plaintiffs respond that the Attorney General's failure explicitly to state his position that certification decisions were orders meant that they "and others had no opportunity to comment on Defendants' stance specifically, and to explain why it is both erroneous and inequitable."  Plaintiffs' Opposition at 3.  However, Plaintiffs did challenge the lack of full rule-making procedures, stating that the proposed

procedures violated due process and recommending modifications to the procedure.

Accordingly, the Court denies Plaintiffs' motion for summary judgment and grants Defendants' cross-motion on the first cause of action.

## III. Failure to Respond to Public Comments

Plaintiffs argue that Defendants failed to respond to public comments when they promulgated the final rule, in violation of the requirement that an agency "must give reasoned responses to all significant comments in a rulemaking proceeding." Int'l Fabricare Inst. v. EPA, 972 F.2d 384, 389 (D.C. Cir. 1992). "An agency need only respond to significant comments, those which, if adopted, would require a change in the agency's proposed rule. Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1404 (9th Cir. 1995). However, "a court should not infer that an agency considered an issue merely because it was raised, where there is no indication that the agency or other proponents refuted the issue." Beno v. Shalala, 30 F.3d 1057, 1074-75 (9th Cir. 1994).

Specifically, Plaintiffs assert that Defendants failed to respond to their comment that, under chapter 154 and prior court decisions, states applying for certification must bear the burden of demonstrating existence of and compliance with specific standards. Plaintiffs argue that the Final Rule "allows state applicants to be presumptively certified on the basis of minimal facial showings." AR 812. Plaintiffs further assert that the procedure adopted by the Final Rule improperly shifts the burden to those challenging the certification and that Defendants nowhere responded to their comment. However, the preamble to the final

United States District Court
For the Northern District of California

rule clearly states, "The Department does not believe, as some commenters urged, that it is necessary to specify detailed information concerning State capital collateral review systems that States must include in their request for chapter 154 certification." AR 1125. Plaintiffs' burden-shifting argument is based, in large part, on their contention that states should be required to provide more information. The Court finds that Defendants' response is sufficient to indicate that Defendants considered arguments regarding burden-shifting.

Next, Plaintiffs argue that Defendants failed to respond to their comment that the failure to publish denials of certifications is contrary to 5 U.S.C. § 555(e). However, the preamble to the Final Rule acknowledges that "[s]ome commenters urged that denials of certification also be published in the Federal Register" and states that "the Attorney General has the option of giving notice by service to the State official who requested certification regarding the denial of the certification and is not legally required to publish the denial." AR 1125-26. Accordingly, Defendants addressed Plaintiffs' concern with respect to the legal requirement that denials of certification be published. Although Defendants did not specifically cite § 555(e), the Court finds that this is sufficient to indicate that Defendants considered arguments that they were required to publish denials of certifications.

Finally, Plaintiffs argue that Defendants did not respond to their concerns that the proposed rule did not identify any "criteria to indicate what type of information will be considered in granting or denying the application." AR 570. However, the

preamble to the Final Rule explains Defendants' reasoning and continues, "States will be free to present any and all information they consider relevant or useful to explain how the mechanism for which they seek certification satisfies" chapter 154's requirements.  AR 1125.  Moreover, the preamble indicates that Defendants found "no persuasive reason for an across-the-board imposition of more definite informational requirements beyond that."  Id.

Accordingly, the Court denies Plaintiffs' motion for summary judgment and grants Defendants' cross-motion on the second cause of action.

III. Procedural Challenges to the Final Rule

Under § 706(2)(A) of the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A). Plaintiffs argue that the certification process set out in the Final Rule is procedurally deficient in violation of the APA.

A.   Certification Decisions as Orders

Plaintiffs first argue that Defendants' determination that certification decisions are orders or adjudications instead of rulemaking violates the APA.  The Ninth Circuit has held that adjudications "resolve disputes among specific individuals in specific cases whereas rulemaking affects the rights of broad classes of unspecified individuals."  Yesler Terrace Cmty. Council v. Cisneros, 37 F.3d 442, 448 (9th Cir. 1994).  A determination resulting from rulemaking is the "whole or a part of an agency statement of general or particular applicability and future effect

designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." Id.

Defendants counter that certification decisions are resolutions of factual questions related to a particular state and whether it is eligible to seek application of the chapter 154 proceedings in individual habeas corpus cases. Accordingly, Defendants argue that certification decisions do not affect the rights of broad classes of individuals. However, each certification will create a presumption that Chapter 154 applies to the habeas proceedings of every condemned prisoner in the relevant state and accordingly affects the litigation strategy of each of those individuals.

Moreover, the fact that the certification decision can be based only on the procedures adopted as policy by a state, rather than the way in which those procedures have been applied in specific cases, undercuts a finding that the certification decisions are fact-based. Finally, as Plaintiffs point out, the fact that individual habeas petitioners will be able to challenge the applicability of chapter 154 in their particular cases only underscores the fact that the Attorney General's certification decisions are rule-making actions that affect the rights of broad classes of individuals.

Defendants further argue that "it is sufficient that the Attorney General had a reasoned basis for [] concluding" that certification decisions are orders rather than rules. Cross-Motion at 18. Defendants rely on the D.C. Circuit's decision in Teva Pharmaceuticals, USA, Inc. v. FDA, 182 F.3d 1003 (D.C. Cir.

20

1999).  However, in Teva, the D.C. Circuit was addressing the
FDA's decision to answer a key question, necessary to the
resolution of a drug company's application to market a drug, as
part of its future rule-making rather than making a case-by-case
order allowing it to determine the outcome of the application.
The Teva panel held that, while an agency "generally has
discretion to determine whether to proceed by adjudication or
rulemaking, litigants also have a right to adjudication of their
claims."  Id. at 1010.  This is not the same discretion exercised
by Defendants in this case to classify a set of all certification
decisions as orders.  The cases relied upon by the Teva panel make
this distinction clear.  For example, in SEC v. Chenery Corp., the
Supreme Court held that "the choice made between proceeding by
general rule or by individual, ad hoc litigation is one that lies
primarily in the informed discretion of the administrative
agency."  332 U.S. 194, 203 (1947).  The Chenery Court based this
holding on an agency's need to address areas in which it "may not
have had sufficient experience with a particular problem to
warrant rigidifying its tentative judgment into a hard and fast
rule."  Id.  Here, Defendants are not declining to exercise their
authority to make a rule.  Instead, they are electing to
characterize any decision under the Final Rule as an order rather
than a rule.

Because certification decisions will "affect[] the rights of
broad classes" of individuals and impact such persons "after the
[decision] is applied," the Court finds that they are more
properly characterized as rules rather than orders.  Yesler
Terrace, 37 F.3d at 448.  Accordingly, certification decisions

21

must comply with all procedural requirements of the APA, including notice regarding the decisions.  The Final Rule, as promulgated, does not "provide sufficient factual detail and rationale" such that interested parties have an opportunity to "comment meaningfully."  Honeywell Int'l Inc. v. EPA, 372 F.3d 441, 445 (D.C. Cir. 2004).  In addition, the public is entitled to notice of an agency's proposed actions.  5 U.S.C. § 553(b)(3).  However, the Final Rule only requires that "the Attorney General will make [a state's] request available on the Internet and solicit public comment on the request by publishing a notice in the Federal Register."  AR 1131.  The Final Rule further provides that the Attorney General will consider the state's request and any timely public comment and then publish the certification in the Federal Register if granted.  This falls short of the requirement that the public be given an opportunity to comment on the Attorney General's proposed decision-making.  Moreover, because the state need not provide any specific information in its request, there is no guarantee that the public will have sufficient information to make meaningful commentary on the request.

B.   Application Process

Plaintiffs also argue that the Final Rule is arbitrary and capricious because a state seeking certification need only submit a "request in writing that the Attorney General determine whether the State meets the requirements for chapter 154 certification." AR 1131.  Plaintiffs contend that this undefined "request in writing" does not require states seeking certification to provide the relevant information necessary to make a reasoned decision. Accordingly, Plaintiffs argue that the certification process

United States District Court
For the Northern District of California

itself is "arbitrary and capricious because it fails to consider and address relevant factors about a state's eligibility for certification and is unrelated to the requirements of Chapter 154." Motion for Summary Judgment at 13. The promulgation of a final rule is arbitrary and capricious when an agency "entirely fail[s] to consider an important aspect of the problem." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).

Plaintiffs further argue that the lack of specificity required by the application process improperly shifts the burden to the public to prove that the state applying for certification does not comply with chapter 154. Chapter 154 itself requires that a state take affirmative steps to prove its eligibility. One court has explained:

> If Congress had intended to afford the States the very significant benefits conferred by Chapter 154 on the basis of a finding of substantial compliance based on past performance, it could have done so. However, it elected not to do so; and instead, Congress chose to confer those benefits only if the State made an affirmative, institutionalized, formal commitment to provide a post-conviction review system which Congress considered to be "crucial to ensuring fairness and protecting the constitutional rights of capital litigants." Powell Committee Report at 3240.

Ashmus v. Calderon, 31 F. Supp. 2d 1175, 1183 (N.D. Cal. 1998), aff'd sub nom. Ashmus v. Woodford, 202 F.3d 1160 (9th Cir. 2000) (quoting Satcher v. Netherland, 944 F. Supp. 1222, 1243 (E.D. Va. 1996)). The Ashmus court found that "a state must establish a system reflecting 'an affirmative, institutionalized, formal commitment' to habeas representation," and that Congress did not

23

intend to permit procedures that "suffer from incoherence or incompleteness."  31 F. Supp. 2d at 1183.

Defendants respond that the Final Rule is not arbitrary and capricious because it "requires demonstration that the requesting state has an established, compliant capital counsel mechanism and subjects that demonstration to public scrutiny."  Cross-Motion at 20.  However, the rule as written requires only a bare-bones request.  Once a state has made its request, the burden shifts to the public to demonstrate that the state does not comply.  Moreover, a state applicant need not submit data demonstrating its record of compliance with its mechanism.  See 78 Fed. Reg. 78,174 (stating that certification decision "need not be supported by a data-intensive examination of the State's record of compliance with the established mechanism in all or some significant subset of postconviction cases.").  Nor must a state demonstrate that its procedures are adequate.

Plaintiffs also challenge the fact that the Final Rule does not require a state to show that it has actually complied with the terms of its submitted mechanism.  The mere existence of state requirements for the appointment, compensation and expenses of competent counsel does not ensure that such requirements are applied and enforced in practice.  Indeed, as Plaintiff FDO-Arizona notes, capital prisoners in Arizona generally wait more than a year and a half after state court affirmance of their convictions and sentences before state post-conviction counsel is appointed.  Public Comment of Federal Public Defender--District of Arizona (June 1, 2011), AR 583-84.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendants counter that they need not examine whether the state has complied with its own mechanism in any given case because chapter 154's requirement of an "established" mechanism "presupposes that the State has adopted and implemented standards consistent with the chapter's requirements." AR 1113. The Final Rule goes on to state that it "allows for the possibility that the Attorney General will need to address situations in which there has been a wholesale failure to implement one or more material elements of a mechanism described in a State's certification submission." AR 1113. However, if states are not required to produce data regarding compliance, the burden will necessarily fall on the public's comments to point out such "wholesale failure."

Common sense requires that a state must actually comply with its own mechanism, and the history, purpose and exhaustive judicial interpretation of chapter 154 also support this view. The Fourth Circuit put it most plainly in <u>Tucker v. Catoe</u>, 221 F.3d 600, 604-05 (4th Cir. 2000):

> We accordingly conclude that a state must not only enact a "mechanism" and standards for post-conviction review counsel, but those mechanisms and standards must in fact be complied with before the state may invoke the time limitations of [chapter 154]. Not only is this conclusion consistent with our precedent, but it is also consistent with common sense: It would be an astounding proposition if a state could benefit from the capital-specific provisions of AEDPA by enacting, but not following, procedures promulgated [to meet chapter 154 requirements].

The Supreme Court noted that AEDPA "creates an entirely new chapter 154 with special rules favorable to the state party, but

applicable <u>only if</u> the State meets certain conditions." <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997) (emphasis added).  In other words, a state may reap procedural benefits only if it has "done its part to promote sound resolution of prisoners' petitions." <u>Id.</u> at 330.  <u>See also</u> <u>Baker v. Corcoran</u>, 220 F.3d 276, 286 (4th Cir. 2000) (Maryland did not qualify for chapter 154 provisions because the state's competency of counsel standards were not applied in the appointment process and the "[c]ompetency standards are meaningless unless they are actually applied in the appointment process"); <u>Ashmus</u>, 202 F.3d at 1168 (stating that California must abide by its competency standards when appointing counsel and concluding that "a state's competency standards must be mandatory and binding if the state is to avail itself of Chapter 154"); <u>Mata v. Johnson</u>, 99 F.3d 1261, 1267 (5th Cir. 1996), <u>vacated in part on other grounds</u> in 105 F.3d 209 (5th Cir. 1997) (stating that competency standards must be "specific" and "mandatory" in order to satisfy the opt-in requirements).

Accordingly, the Court finds that the certification procedure set out in the Final Rule is procedurally deficient and therefore arbitrary and capricious under the APA.  The Court grants Plaintiffs' motion for summary judgment and denies Defendants' cross-motion with respect to the third cause of action.

IV.  Substantive Challenges to the Final Rule

Final regulations are arbitrary and capricious when they fail to provide "definitional content" for terms guiding agency action implementing a statute.  <u>Pearson v. Shalala</u>, 164 F.3d 650, 660 (D.C. Cir. 1999).  An agency is "obliged under the APA" to give content to statutory standards it is tasked with implementing.

Id. at 661.  An agency cannot leave a prospective applicant "utterly without guidance as to what he must prove, and how." S. Terminal Corp. v. EPA, 504 F.2d 646, 670 (1st Cir. 1974).  "When an agency utterly fails to provide a standard for its decision, it runs afoul of more than one provision of the Administrative Procedure Act. . . . An agency's failure to state its reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious." Checkosky v. SEC, 139 F.3d 221, 226 (D.C. Cir. 1998) (citation omitted).

Plaintiffs argue that the certification process is substantively arbitrary and capricious in several respects.

A. Criteria

Plaintiffs first argue that the Final Rule is arbitrary and capricious because it provides no substantive criteria as to how a state may satisfy the requirements of chapter 154.  Section 26.22(b) allows a state to be certified if its competency standards "reasonably assure a level of proficiency appropriate for State post-conviction litigation in capital cases."  AR 1113. Plaintiffs argue that this "catch-all" provision is broad and vague.  In response, Defendants point to other specific provisions in section 26.22, which Plaintiffs concede are based on specific criteria and therefore contain definitional content, and argue that those sections provide "benchmark" competency standards "that serve as a point of reference in judging the adequacy of other counsel qualification standards that States may establish and offer for certification."  AR 1123.

27

United States District Court
For the Northern District of California

Defendants state that "the suggestion that the catch-all provision negates the more specific provisions is unsupported." Cross-Motion at 22.  Defendants also note that the Final Rule enumerates "[m]easures that will be deemed relevant[, including] standards of experience, knowledge, skills, training, education, or combinations of these considerations that a State requires attorneys to meet in order to be eligible for appointment in State capital postconviction proceedings."  AR 1130.  Nevertheless, Defendants do not and cannot deny that the Attorney General can base his certification decision on section 26.22(b) alone.

Defendants also argue that the catch-all provision gives effect to congressional intent.  According to Defendants, Congress intended that states be given "wide latitude to establish a mechanism that complies with [the statutory requirements.]"  AR 1113.  But latitude should not be conflated with free rein.  See Bd. of Educ. v. Rowley, 458 U.S. 76, 183 (1982) (noting that although the Education of the Handicapped Act gives states the "primary responsibility for developing and executing programs, it imposes significant requirements to be followed in the discharge of that responsibility.").

In June 1988, a committee, chaired by retired Supreme Court Justice Lewis Powell, was commissioned by then Chief Justice William Rehnquist to assess the delay and lack of finality in capital cases.  135 Cong. Rec. 24694 (1989), Ad Hoc Committee on Federal Habeas Corpus in Capital Cases Committee Report (Powell Committee Report).  The Powell Committee, whose proposal chapter 154 is intended to codify, explained that the "provision of competent counsel for prisoners under capital sentence throughout

both state and federal collateral review is crucial to ensuring fairness and protecting the constitutional rights of capital litigants." 135 Cong. Rec. S13471-04, S13481, S13482, Powell Committee Report. In chapter 154, Congress provided a quid pro quo design: a state receives expedited federal review in exchange for its guarantee of adequate representation in state habeas corpus proceedings. See Ashmus, 31 F. Supp. 2d at 1180 ("As courts have uniformly held, chapter 154 explicitly contemplates a quid pro quo relationship."). The legislative history of chapter 154 supports the principle that a regulation effectuating it must require that a state actually uphold its end of the bargain -- to provide competent representation.

B. Effect of Common Law

Plaintiffs next argue that the Final Rule is arbitrary and capricious because it does not address the effect of judicial interpretation. The Final Rule states that "prior judicial interpretation of chapter 154, much of which remains generally informative, supports many features of this rule . . . . To the extent the rule approaches certain matters differently from some past judicial decisions, there are reasons for the differences." AR 1115. The Final Rule goes on to state that it is impossible consistently to follow judicial decisions because different courts reached conflicting conclusions on some matters and legislative amendments to chapter 154 preclude the Attorney General from relying on certain case law.

Plaintiffs do not dispute that the Attorney General cannot follow every existing case interpreting chapter 154. Nonetheless, they argue that the concerns raised in the Final Rule "do not

United States District Court
For the Northern District of California

render all previous judicial interpretations irrelevant to evaluating an application for certification." Motion for Summary Judgment at 22. Although the Final Rule recognizes that existing case law "remains generally informative" and states that the body of law "supports many features of this rule," it does not in any way address how prior judicial decisions will inform individual certification decisions. Defendants simply state that they were not required to address prior judicial interpretation in the Final Rule, but provide no support for this contention. Cross-Motion at 24. As Plaintiffs noted in their comments during the rulemaking, traditional tools of statutory construction dictate that judicial precedent is a source for giving content to federal standards. See AR 157 (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 448 (1987).

Plaintiffs point to the example of Texas's application, submitted on March 11, 2013. Texas seeks certification based on a state mechanism established in 1995. However, the Fifth Circuit had already held that the mechanism in place at that time did not comply with chapter 154. Mata, 99 F.3d at 1267. The Final Rule does not explain whether the Attorney General will incorporate the standards and apply the rulings of the courts to a state's application.

Defendants also argue that Plaintiffs failed to raise this issue in their comments submitted during the rulemaking. However, Plaintiffs' comments stated, among other things, that "Congress's decision not to overturn [prior] judicial interpretations or change the terms of the requirements demonstrates congressional acceptance of them." AR 156. Plaintiffs further opined, "These

United States District Court
For the Northern District of California

1  interpretations should be reflected in the minimum federal

2  standards included in the Attorney General's regulations."  Id.

3  Plaintiffs clearly raised the issue of prior judicial

4  interpretation of chapter 154 in their comments.

5       C.    Ex Parte Communication

6       Finally, Plaintiffs argue that the Final Rule is arbitrary

7  and capricious because it fails to address the nature and effect

8  of ex parte communications between the Attorney General and state

9  officials.  Defendants counter that Plaintiffs failed to address

10 the issue of ex parte communications in their public comment.

11 However, the public comment period closed on June 1, 2011 and

12 Plaintiffs did not discover the ex parte communications until

13 April 2013.  See Baich Dec. ¶ 7.

14      Even before the Final Rule went into effect, Attorney General

15 Holder and Arizona Attorney General Tom Horne commenced a process

16 of certification without notifying interested parties.  Baich

17 Dec., Exs. E, F.  On April 18, 2013, Attorney General Horne sent a

18 letter to Attorney General Holder requesting certification of

19 Arizona as an "opt-in" state.  Baich Dec., Ex. E.  Plaintiff FDO-

20 Arizona learned of this letter only through a press release issued

21 by the Arizona Attorney General's Office.  On June 4, 2013,

22 Plaintiff FDO-Arizona wrote a letter to Attorney General Holder,

23 referring to Attorney General Horne's letter and formally

24 requesting notification of any correspondence or communication

25 between the DOJ and the Arizona Attorney General's Office.  Baich

26 Dec., Ex. F.  On July 16, 2012 -- more than two months prior to

27 the publication of the Final Rule -- the DOJ informed Arizona that

28 it would review the state's application immediately.  In a letter

to the Arizona Attorney General, the DOJ stated that it would
begin reviewing Arizona's application to "help speed up the
ultimate determination of the certification." Baich Dec., Ex. G.
Plaintiff FDO-Arizona was not copied on the DOJ's response to
Arizona and did not receive an acknowledgment of or a response to
its letter. Baich Dec. ¶¶ 7-8.

In response, Defendants simply note that the APA does not
prohibit ex parte communications. However, in light of the
certification procedure set out in the Final Rule, specifically
the bare requirement of a "written request" and a single
opportunity for public comment based on that potentially bare-
bones request, ex parte communications severely interfere with the
public's ability to make informed comment on any application for
certification. Defendants argue that the Final Rule provides that
the Attorney General may publish subsequent notices providing a
further opportunity for comment, but there is no requirement that
the Attorney General publish anything but the initial written
application. See Erringer v. Thompson, 371 F.3d 625, 629 (9th
Cir. 2004) (holding that the APA's notice requirements exist to
afford interested parties a meaningful opportunity to respond to
agency action). Ex parte communication excludes interested
parties from offering input regarding the validity and accuracy of
such undisclosed communications and documents.

Accordingly, the Court grants Plaintiffs' motion for summary
judgment and denies Defendants' motion for summary judgment on the
fourth cause of action.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiffs' motion for summary judgment and GRANTS in part Defendants' cross-motion for summary judgment.  Defendants may not put into effect the rule entitled, "Certification Process for State Capital Counsel Systems," published at 78 Fed. Reg. 58,160 (Sept. 23, 2013).  Defendants must remedy the defects identified in this order in any future efforts to implement the procedure prescribed by chapter 154.  This order disposes of all of the causes of action.  The Clerk of the Court shall enter judgment and close the case.  All parties shall bear their own costs.


IT IS SO ORDERED.


Dated:  8/7/2014

CLAUDIA WILKEN
United States District Judge